IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

WLLIAM DAVID SEAL                                                    PLAINTIFF

VERSUS                                CIVIL ACTION NO.: 1:08cv175LG-RHW

HARRISON COUNTY, MISSISSIPPI, by and through its
Board of Supervisors; HARRISON COUNTY SHERIFF,
George Payne, in his official capacity; CORRECTIONS
OFFICER THOMAS PRESTON WILLS, acting under color
of state law; CORRECTIONS OFFICER RYAN TEEL,
acting under color of state law;  CORRECTIONS OFFICER
MORGAN THOMPSON, acting under color of state law            DEFENDANTS

# FIRST AMENDED COMPLAINT

## PLAINTIFF REQUESTS A TRIAL BY JURY

COMES NOW the Plaintiff, William David Seal, by and through his undersigned

counsel, and files this his FIRST AMENDED COMPLAINT, for gross deprivation of his

civil rights resulting in grievous physical and mental injuries and related and resultant

damages, against these Defendants and in support thereof, respectfully submits the

following to this Honorable Court:

## PRELIMINARY STATEMENT OF CLAIM

1.      This is a Federal Civil Rights lawsuit, claim and action brought under 42

USC § 1983, 42 USC § 1985 and 42 USC § 1988 and under the protections, privileges

and provisions afforded the Plaintiff, William David Seal, and any similarly situated

accused and arrested citizen temporarily incarcerated as a "pre-trial detainee" under the

Due Process Clause of the Fourth Amendment to the United States Constitution and the

Fourteenth Amendment to the United States Constitution and also the protections

afforded incarcerated prisoners under the provisions and standards of the Eighth Amendment to the United States Constitution should the Court determine the Plaintiff to be a entitled to the protections afforded to convicted offenders incarcerated in a penal institution as prisoners.

2.      Your Plaintiff, William David Seal, alleges that, on or about September 4, 2005 he was brutally beaten by Defendant Corrections Officer Ryan Teel, Wills and Thompson of Harrison County, and others while temporarily held in custody as a pre-trial detainee in the Booking Department of the Harrison County Adult Detention Center/Facility located in Gulfport, Mississippi.

3.      The aforementioned Corrections Officer and others, while acting under color of law, willfully, wantonly and intentionally used excessive force against William David Seal in an act of corporal punishment amounting to an assault and battery resulting in significant injury to his person.

4.      That after a complaint was made concerning these gross abuses and injuries your Plaintiff William David Seal suffered, high ranking officials of the Harrison County Sheriff's Department, with final decision making authority, assisted by the above Defendant Corrections Officers Teel, Thompson and Wills engaged in acts to falsely deny and/or cover-up what had occurred and further threatened the injured Plaintiff with retaliatory actions.

5.      That similar actions by Harrison County Corrections Officers, acting under color and authority of law, of civil rights violations, abuse and injurious use of excessive force as acts of corporal punishment amounting to assault and battery against other inmates and pre-trial detainees and cover-ups by officials occurred both before and

after these injurious actions of abuse against William David Seal to such an extent as to evidence a prior and continuing pattern, custom and usage of similar violations regarding the constitutional protections afforded persons incarcerated within the Harrison County Adult Detention Center (HCADC).

6.    That the Defendant, Harrison County, by and through its Board of Supervisors and its Sheriff, George Payne, were aware of a pattern of abuse at the HCADC. Specifically, its knowledge stemmed from: (1) a Consent Judgment (January 11, 1995) issued in 1995 by the United States District Court; (2) continuing violations of that Consent Judgment (January 11, 1995); (3) the February 1, 2005 7th Supplemental Report for the Department of Justice, (4) other official correspondence from the United States Department of Justice notifying Defendant Harrison County of "very disturbing pattern of a misuse of force" within the HCADC; and (5) numerous complaints by citizens of Harrison County who were abused at the HCADC that were made directly to the Harrison County Board of Supervisors, the Harrison County Sheriff, the District Attorney of Harrison County, and other county officials.

7.    That the Defendant, Harrison County, by and through these official failed to take any meaningful action to prevent the continuation of abuse at the HCADC, thus evidencing a "policy" and "deliberate indifference" to the known consequences of the policy, which foreseeably and consequently resulted in continued abuse and constitutional violations against incarcerated persons, including your Plaintiff, William David Seal, at the HCADC.

8.    That the Defendant Harrison County, by and through its Board of Supervisors and Sheriff George Payne, and/or their appointed officials granted and

3

clothed with final policy and/or decision making authority, whether actual or de facto, participated, encouraged, authorized or acquiesced in the existence of subordinate officials' failure to properly supervise, control, direct, discipline and/or train Harrison County Corrections Officers to prevent these constitutional violations resulting directly, foreseeable and consequently in continuing abuses of and use of injurious excessive force on inmates and detainees held within the HCADC including your Plaintiff, William David Seal. In this case, by way of example, there was no corrective action taken against any of the officers involved in the beating of your Plaintiff, William David Seal.

## JURISDICTION OF THE COURT

9.     This Honorable District Court has original jurisdiction under 28 U.S.C. § 1331 Federal Question for all civil actions arising under the Constitution of the United States and 28 U.S.C. § 1343 to redress deprivations, under color of state law, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or all persons within the jurisdiction of the United States and to recover damages or other relief under any Act of Congress providing for the protection of civil rights. This is a Complaint brought against the Defendants for the intentional violation of liberties secured, protected and guaranteed by the Fourth and Fourteenth Amendments (and, if applicable, the Eighth Amendment) to the Constitution of the United States and by the applicable Federal Statutes prohibiting such deprivations, more particularly, 42 U.S.C. § 1983 wherein your Plaintiff is seeking to obtain a judgment for all damages, including all allowable costs of this suit and an award of reasonable attorney's fees, suffered and sustained by the

Plaintiff, William David Seal, for the egregious and heinous acts committed against him under color and authority of law, resulting in his significant and serve injuries.

**VENUE**

10.     The filing of this Complaint in the United States District Court for the Southern District of Mississippi, is proper pursuant to 28 U.S.C. § 1391 (b) as a substantial part of the events or omissions giving rise to the claim occurred in Harrison County, Mississippi, which is part of this Court's jurisdictional district and division.

**PARTIES TO THE LAWSUIT**

**PLAINTIFF**

11.     Plaintiff, William David Seal, is a citizen of the United States of America and currently resides in Gulfport, Mississippi.

**DEFENDANTS**

12.     Defendant, Harrison County, Mississippi, by and through its Board of Supervisors, is a political subdivision of the State of Mississippi and is the entity having ultimate authority, responsibility and control of and for the oversight, decisions affecting and funding of the Harrison County Sheriff and the Harrison County Adult Detention Center.  Defendant may be served with process by lawfully affecting same upon the current President of the Board, Honorable Larry Benefield, and/or the Chancery Clerk for Harrison County, Mississippi, Honorable John McAdams; both at the location of their official offices located within the Harrison County Courthouse in Gulfport, Mississippi.

13.     Defendant, George Payne (acting in his official capacity) at all times relevant to this Complaint, was the duly elected Sheriff of Harrison County, Mississippi, is an adult resident citizen of Harrison County, Mississippi.  As Sheriff, Defendant Payne

5

was vested with the final decision making authority and responsibility to hire, train, supervise, set policies and determine procedures, enforce policies and procedures, delegate authority and generally oversee and supervise the daily operation of the entire Harrison County Sheriff's Department and all its divisions, departments and personnel including the Harrison County Adult Detention Center (HCADC). As such, he was directly responsible for the handling of all persons detained, confined, incarcerated or otherwise held, regardless of individual status, within the HCADC. Sheriff Payne is being sued in his official capacity. He may be served with process as authorized by law where he or his duly authorized designee, at his offices within the Harrison County Courthouse or at the HCADC located at 10451 Larkin Smith Drive, Gulfport, Mississippi.

14.    Defendant, Thomas Preston Wills, at all times relevant to this Complaint, was an appointed and commissioned Corrections Officer of the Booking Department for the Sheriff of Harrison County, Mississippi, was an adult resident citizen of Mississippi and within the jurisdiction of this Court. As a Corrections Officer, Wills participated in the daily operations of his specific shift of the Harrison County Sheriff's Booking Department within the Harrison County Adult Detention Center (HCADC). As such, he was directly responsible for handling persons detained, confined, incarcerated or otherwise held, regardless of individual status within the Booking Department of the HCADC. Defendant Wills is being sued as a state official acting under color of state law. He may be served with process as authorized by law where he may be found as he is a convicted offender incarcerated within the authority of the Federal Bureau of Prisons for criminal violation of the civil rights of individuals under his control and authority while

6

employed by the Sheriff's Department as a Corrections Officer assigned to the Booking Department.

15.    Defendant, Ryan Teel, at all times relevant to this Complaint, was an appointed and commissioned Corrections Officer of the Booking Department for the Sheriff of Harrison County, Mississippi, was an adult resident citizen of Mississippi and within the jurisdiction of this Court. As a Corrections Officer, Teel participated in the daily operations of his specific shift of the Harrison County Sheriff's Booking Department within the Harrison County Adult Detention Center (HCADC). As such, he was directly responsible for handling persons detained, confined, incarcerated or otherwise held, regardless of individual status within the Booking Department of the HCADC. Defendant Teel is being sued as a state official acting under color of state law. He may be served with process as authorized by law where he may be found as he is a convicted offender incarcerated within the authority of the Federal Bureau of Prisons for criminal violation of the civil rights of individuals under his control and authority while employed by the Sheriff's Department as a Corrections Officer assigned to the Booking Department.

16.    Defendant, Morgan Thompson, at all times relevant to this Complaint, was an appointed and commissioned Corrections Officer of the Booking Department for the Sheriff of Harrison County, Mississippi, was an adult resident citizen of Mississippi and within the jurisdiction of this Court. As a Corrections Officer, Thompson participated in the daily operations of his specific shift of the Harrison County Sheriff's Booking Department within the Harrison County Adult Detention Center (HCADC). As such, he was directly responsible for handling persons detained, confined, incarcerated or

7

otherwise held, regardless of individual status within the Booking Department of the HCADC. Defendant Thompson is being sued as a state official acting under color of state law. He may be served with process as authorized by law where he may be found as he is a convicted offender incarcerated within the authority of the Federal Bureau of Prisons for criminal violation of the civil rights of individuals under his control and authority while employed by the Sheriff's Department as a Corrections Officer assigned to the Booking Department.

## STATEMENT OF THE CASE

**VIOLATION OF CONSTITUTIONAL PROTECTIONS AFFORDED PRE-TRIAL DETAINEE WILLIAM DAVID SEAL RESULTING IN SERIOUS INJURY BY CORRECTIONS OFFICERS AND MEDICAL STAFF ACTING UNDER COLOR OF STATE LAW**

17.    This is a Federal Civil Rights lawsuit, claim and action brought under 42 USC § 1983, USC § 1985 and USC § 1988 and under the protections and provisions afforded the Plaintiff, William David Seal, and any similarly situated accused and arrested citizen as a "pre-trial detainee" under the Due Process Clause of the Fourth Amendment to the United States Constitution and the Fourteenth Amendment to the United States Constitution (afforded the same rights as incarcerated prisoners under the provisions and standards of the Eighth Amendment to the United States Constitution) as these Amendments apply to pre-trial detainees held in certain circumstances and conditions similar and/or analogous to convicted offenders incarcerated in a penal institution as prisoners.

18.    While temporarily held in the Harrison County Adult Detention Center (HCADC), beginning on or about September 4, 2005 Seal was brutally beaten and abused by Defendant Corrections Officers Teel, Thompson and Wills, who were using excessive

8

force, in the course and scope of their employment and while acting under color of state law as local officials for Harrison County, Mississippi, resulting in serious injuries and a gross deprivation of protective constitutional provisions and complete denial of Seal's due process and related civil rights.   In addition, Defendant Corrections Officer Teel, Thompson and Wills, conspired to cover up the incident failing to file Use of Force Reports, which constitute further actions to deny Seal's due process and related civil rights.

19.    All the injurious and harmful actions against Seal are alleged to have been committed while Defendants Teel, Thompson and Wills acting under "color of law", specifically state law and their authority as Corrections Officers, resulting in gross deprivations of the Plaintiff's afforded and asserted constitutional rights, interests, immunities and protections, resulting in serious, severe and significant physical and mental injuries.

### INTENTIONAL USE OF INJURIUOUS EXCESSIVE FORCE

20.    The Defendant Corrections Officer, who were all Corrections Officers working at the HCADC on the date in question, used unnecessary, unreasonable and wanton force on pre-trial detainee Seal when he was brutally beaten in Booking on or about September 4, 2005.

21.    On or about September 4, 2005 Plaintiff, William David Seal was arrested on suspicion of violation of law for committing a misdemeanor crime (specifically, the violation which lead to his being arrested was making harassing phone calls to the Gulfport Police Department) and transported to the Harrison County Adult Detention

Center (HCADC) where he was booked into custody.   He was not injured when he arrived except that he had a cut on his left cheek.

22.    After arrival at the HCADC intake area as an arrestee, Seal held the legal status of a "pre-trial detainee."  He had not been convicted of the crimes for which he was charged and had not been sentenced to any period of incarceration as punishment for such crimes. Seal was not a convicted offender for these charges.  He was not incarcerated for any judicially sanctioned punishment.   He was merely being held on suspicion of committing a crime.

### SEAL ASSAULTED AND INJURED

23.    While being detained in Booking, Seal requested medical treatment for his injury, a gash on his cheek below his left eye, sustained during his arrest.

24.    Corrections Officers did not call for a nurse, but responded stating, "Well, we'll just pout some alcohol on it" or similar words to that effect.

25.    Seal, a medical professional, was shocked and outraged by this suggestion, as he was aware such 'treatment' by the Corrections Officers would only make his injury worse.  Seal protested about what the Corrections Officers were planning on pouring on his wound.  In response to his 'comment', one of the Corrections Officers, believed to be Defendant Preston Wills, assaulted him by wrenching his thumb.

26.    The pain was so intense that Seal thought his thumb had been broken.

27.    After being discharged, Seal made repeated calls to the Sheriff's Department to file a complaint about his treatment at the HCADC.  Ron Werby of Harrison County, prepared an Investigative Report wherein he reported that upon arrival to HCADC, Seal reportedly "continued to be disorderly" in Booking.  Specifically, he

found that two officers he interviewed (Officer Wills and Officer Thompson) used force against Seal. Werby reported to having watched the video of the incident and noted that he saw Seal's hand move toward Officer Thompson. He then noted that Officer Wills used "brachial plexus stun" on Seal and that several other officers (believed to be Officer Teel and Officer Thompson) then "took him to the ground".

28.     No use of force reports were filed by any of the officers.

29.     No video tape of the incident has been produced even though Werby indicated in his Report that he watched the video of the incident.

30.     Seal recalls that his face was slammed to the ground and then an officer grabbed him from behind in a choke-hold. He could not breath and he lost consciousness.

31.     Seal thought he was going to die from the attack.

32.     After regaining consciousness, Seal was made to remove his clothing. When he removed his pants, the Corrections Officers laughed and said "Ah look, we made him crap himself" or words to that effect. Seal was then placed in handcuffs. He recalls one of the officers saying "put them on as tight as they can go" or words to that effect.

33.     Seal remembers waking up in a cell and another inmate calling out to the Corrections Officers to that Seal's hands were purple and that they needed to loosen the handcuffs. Seal was afraid and asked the inmate to be quiet.

34.     Such force and humiliation was intentional, malicious, sadistic, excessive, not applied in good faith and was used for the sole purpose of causing harm and inflicting pain. Such force and humiliation amounted to willful punishment of a pre-trial detainee.

35.   The force described in the preceding paragraph:

A.   Was grossly disproportionate to any need for use of force and was inspired by malice rather than merely careless or unwise zeal.

B.   Said force amounted to an abuse of official power, intentional to the extent that it "shocks the conscience."

C.   Such force evidenced a "deliberate indifference" to the safety, well-being and protections afforded Seal.

D.   Such force caused significant pain and unbearable suffering to Seal.

E.   Such force amounted to cruel and unusual punishment.

F.   Such force caused and directly resulted in substantial, severe, significant, debilitating and permanent physical, mental and psychological injuries to Seal.

36.   These intentional injurious actions by these Defendants violated the due process protections afforded Seal under the Fourth and Fourteenth Amendments to the U.S. Constitution and violated Seal's protections afforded under these Amendments as they apply to incarcerated persons being held as pre-trial detainees (being the same protection afforded under the Eighth Amendment prohibiting cruel and unusual punishment to prisoners).

### DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS FOR SUBSTANTIAL INJURIES SUSTAINED BY SEAL FROM BRUTAL BEATING IN BOOKING

37.   Plaintiff, William David Seal, suffered serious injuries and substantial pain and suffering due to the injuries he sustained at the hands of Defendant Corrections

Officers. These injuries suffered by Seal were immediately obvious and readily apparent (even to a non-medical professional/lay person) evidencing the need for timely medical attention.

38.    After Seal's beating he suffered injuries to his face, his head, his neck, his arms, wrist and to his thumb.

39.    Regardless of these obvious, readily apparent and immediately observable injuries; Seal was denied necessary medical care and treatment by Correctional Officers of the HCADC and by medical personnel on duty (who were agents of Defendant Harrison County).

40.    The Correctional Officers of the HCADC and the medical personnel on duty (who were agents of Defendant Harrison County) were aware and/or knew of his serious medical needs but intentionally disregarded them and delayed transporting him to the Emergency Room at Memorial Hospital at Gulfport until September 5, 2005 (at approximately 1300).

41.    Such conduct rose to the level of constituting the unnecessary, willful, wanton and intentional infliction of substantial pain and suffering. Such conduct rose to the level of cruel and unusual punishment.

42.    Further, such conduct:  (1) exposed Seal to a substantial risk of serious damage to his future health; (2) denied Seal reasonable medical care for which a pre-trial detainee was entitled; and (3) such denial and deliberate indifference to Seal's obvious need for timely treatment of serious, substantial and painful injury, in and of itself, violated the due process protections afforded him under the Fourth and Fourteenth Amendments to the U.S. Constitution and violated Seal's protections under these

13

Amendments (affording Plaintiff Seal the same protections afforded by the Eighth Amendment prohibiting cruel and unusual punishment as it applies to incarcerated persons being held as prisoners).

## CONSPIRACY TO COVER-UP BEATING(S)
## BY CORRECTIONAL OFFICERS

43.     Supervisors and supervisory personnel of the HCADC had actual knowledge and acquiescence of their Correctional Officers and other employees' injurious actions against Seal.

44.     Prior to the intentional injuries inflicted upon pre-trial detainee Seal, these supervisors and supervisory personnel were aware of similar injurious actions against other pre-trial detainees.

45.     After Seal's beating, Defendants participated in a conspiratorial scheme to camouflage, cover-up, falsely explain and/or deny what in truth and in fact happened to Seal.

46.     Upon receiving several calls from Mr. Seal asking for an investigation into the abuse he suffered at the HCADC, Steve Campbell tasked Ron Werby with conducting an investigation and preparing an Investigation Report.  Werby noted use of force was exerted by the Defendant Corrections Officers, however, no Use of Force Reports were noted or provided.  Furthermore, the videotape of the incident (which Werby claimed showed Seal moving his hand toward Officer Thompson) has not been produced.

47.     Werby concluded that Seal's complaints were unfounded and no disciplinary action or training of the Corrections Officers involved was ordered.

14

48.    The aforementioned actions were intentionally taken by the Defendant Corrections Officers, and the failure to take any corrective action was intentionally taken by RonWerby and by his supervisor, Steve Campbell, all acting under color of state la.

49.    The manner in which officials at the HCADC handled this matter is part of the pattern of abuse and misuse of force within Booking on pre-trial detainees such as Seal, and officials (including Captain Steve Campbell, Major Wayne Payne, and Sheriff George Payne), all as the ranking officers with final decision making authority for the Harrison County Sheriff's Department aided and abetted the misuse of force within Booking, and the conspiracy related thereto, by either condoning such acts and/or by failing to take appropriate  actions and measures in order to prevent the abusive and injurious actions of the Corrections Officers in Booking; thus, subjecting the Plaintiff to abuse in violation and deprivation of rights afforded to him as set forth above.

## HABIT, PATTERN, CUSTOM AND POLICY

50.    Sheriff Payne was charged with the operations of the HCADC and the Harrison County Board of Supervisors reviewed the budget and approved / disapproved appropriations to fund the operations of the HCADC through the annual budget process.

51.    The Defendant Harrison County, by and through its Board of Supervisors and its Sheriff George Payne were aware of a Consent Judgment (January 11, 1995) where Harrison County was the named defendant, which identified numerous deficiencies at the HCADC.  The members of the Board of Supervisors were aware that the Harrison County had an obligation to provide quarterly status reports to the Department of Justice under the terms of the Consent Judgment (January 11, 1995), for the purpose of identifying efforts being made by Harrison County to bring the HCADC

within compliance of the terms set forth in the Consent Judgment (January 11, 1995). Members of the Board of Supervisors took no part in completing or monitoring compliance with this obligation.

52.     The Defendant Harrison County, by and through its Board of Supervisors and its Sheriff George Payne were also aware of a report entitled "7th Supplement Report of Steve J. Martin Prepared for the US Department of Justice" dated the February 1, 2005.  In this report, Mr. Martin set forth findings following his inspection of the HCADC during December 2004.  Specifically, Mr. Martin noted "In the six previous reports filed since 1997 there was a single instance in which I reported on a misapplication of force, chemical agents or restraints (see 2nd Supplemental Report, July 1998).  As aforementioned, there were ***thirty-one incidents of force in December 2004***, which represents a series increase in the use of force at the HCDC.  In reviewing the use of force incident packages for November / December 2004, ***a very disturbing pattern of misuse of force is evident***."  (emphasis added)

53.     This report was furnished to officials in Harrison County, including the Sheriff, the District Attorney and the Board of Supervisors.  In spite of being aware of the above, neither the Harrison County Board of Supervisors, nor the Harrison County Sheriff, nor the District Attorney of Harrison County, conducted an investigation (convened a grand jury to do so) or took any other similar affirmative action to investigate, curtail or cease the "***very disturbing pattern of misuse of force***" noted by Mr. Martin.

54.    The same use of force packages that Mr. Martin reviewed in December 2004 were equally available to the Sheriff, the District Attorney and to the Board of Supervisors.

55.    During 2005, complaints of abuse continued to be made to officials of Harrison County, including complaints by John Aaron Vanderburg (May 2005), Your Plaintiff, William David Seal (September 2005), Only Al-Khidhr (October 2005) and Gary Brice McBay (November 2005).

56.    During January 2006, Kasey Alves was tortured at the HCADC. The circumstances surrounding his abuse were investigated by officials at the HCADC, including Defendant Sheriff Payne. Even though video coverage of the incident shows abuse by Ryan Teel against Mr. Alves, no corrective action was taken by Defendant Payne against Teel. The only action taken by the Sheriff was to suspend two officers for three days for failing to follow procedures related to the use of a restraint chair, even though the misuse of the chair almost resulted in the death of Mr. Alves.

57.    In February 2006, Jessie Lee Williams, Jr. was beaten to death by officers at the HCADC. The same officers involved in the beating death of Mr. Williams were the officers known to have beaten other pre-trial detainees, including your Plaintiff and those named above.

58.    The widespread custom and practice of abuse in the Booking Department at HCADC was known, or at least, should have been known by Harrison County officials. In spite of ample evidence of abuse at HCADC, Harrison County officials failed to act to punish such conduct, and actually took such action as to condone the behavior of its officers. The actions taken on the part of Harrison County in the face of

the evidence of abuse establishes the presence of a policy, as well as "deliberate indifference" to the known consequences of the policy. The "policy" and the "deliberate indifference" were the driving force behind the abuse, and foreseeably and consequently resulted in continued abuse and constitutional violations against incarcerated persons at HCADC, including your Plaintiff, William David Seal.

### FURTHER EVIDENCE AND DOCUMENTATION OF OFFICIAL RECORD

59.    Evidence in the form of numerous sworn eye-witness testimony is now of public record before this Honorable Court by virtue of the guilty pleas of former Correctional Officers to criminal charges concerning intentional, abusive, harmful, injurious, unnecessary, malicious, wanton and willful use of excessive force against pre-trial detainees and prisoners.

60.    The aforementioned evidence documents a wide spread and lengthy habit, pattern or custom of abusing detained and incarcerated persons by the use of excessive force resulting in significant injuries. This evidence also came to light and of record during the trial of two supervisory personnel Defendants Gaston and Teel in the United States District Court, Southern Division of Mississippi. (Specifically, during the trial, former Corrections Officers testified in open court to the routine and pervasive physical and mental abuse of pre-trial detainees in the Booking Division of the HCADC. Further, these witnesses testified to personal participation and observation of supervisors and Deputy Sheriff's up to the rank of Major having participation, personal knowledge of and otherwise being aware of these former Corrections Officers abusive actions.)

### PERSISTENT AND WIDESPREAD PRACTICES OF INJURIOUS ABUSE AND USE OF EXCESSIVE FORCE ON PRE-TRIAL DETAINEES THAT "SHOCK THE CONCIENCE"

## WELCOME TO THE HOUSE OF PAYNE

61.    Shift supervisor Sergeant Ryan Teel, commonly referred to the HCADC as the "House of Payne" as a play on words of the Sheriff's last name and the term "pain."

62.    Other Correction Officers, including Teel, working on Teel's shift commonly welcomed arriving arrestees into the Booking room of the HCADC using this term.

63.    The phrase "Welcome to the House of Payne!" was used in a menacing, threatening manner designed specifically to immediately intimidate and instill fear and psychological terror.

64.    The Correctional Officer's routine statements (such as the one mentioned) upon arriving and during the in-processing of detainees within Booking evidence a pattern and practice of behavior that was pre-planned, customary, routine and intentional.

## "THUMPING" ARRIVING ARRESTEES

65.    Corrections Officers also routinely "thumped" arriving arrestees by slamming their heads down onto the Booking Room counter where handcuffed arrestees where initially processed upon arrival in Booking.

66.    Corrections Officers would escort a handcuffed arrestee up to the in-processing Booking Room counter and then without warning "thump" the head of the arrestee on the hard counter.

67.    This "thump" resulted in pain and suffering to the individual thumped and many times resulted in a bloody cut, split or gash on the person's head and/or face.

68.     After the thump, medical treatment was not provided and, if bleeding, the arrestee was further berated for causing a mess, etc.

69.     After a "thump," no medical care or treatment was given to the arriving arrestee, regardless of obvious and apparent injury.

70.     Such force in the manner described evidenced the habit, pattern, custom and usage Correctional Officers within HCADC Booking of the intentional infliction of pain without justification on detainees resulting in cruel and unusual punishment.

### ARRIVING ARRESTEES WHO WERE CONSIDERED VERBALLY AGGRESSIVE WERE RESPONDED TO WITH EXCESSIVE AND UNJUSTIFIED USE OF UNNECESSARY FORCE

71.     Teel and the other Corrections Officers would routinely berate and belittle and otherwise antagonize arriving arrestees to incite them to respond.  When an arriving arrestee responded, in any manner deemed to be "unruly" or even "verbally aggressive," Corrections Officers in Booking would react with abusive, unnecessary, unjustified, excessive and injurious use of force.

72.     Merely speaking up was considered a show of "aggression."  This unnecessary response and misuse of force included striking with fists to the face and body, kicking, choking and slamming an arriving arrestee against the concrete walls and floors within the Booking area while the arriving arrestee was still restrained with handcuffs.

73.     After the aforementioned uses of force, minimal medical care or treatment, if any, was given to the assaulted arriving arrestee regardless of obvious and apparent injury and pain.  In some cases, even though the assaulted arrestee had suffered serious

injuries, hours would pass before medical personnel would call to have the injured transported to the hospital

74.    Such force in this manner evidenced the habit, pattern, custom and usage by Correctional Officers within HCADC Booking of the intentional infliction of pain without justification on detainees resulting in cruel and unusual punishment.

## THEME NIGHTS IN BOOKING

75.    Corrections Officers working in Booking had "theme nights", where various nights of the week had specific titles.

76.    Some of the aforementioned "theme nights" were:    "Drunk Bitch Wednesday", "Thump a Thug Thursday", "Fight Night Friday" and "Slap a Hoe (whore) Saturday."

77.    The very existence of these "theme nights" evidences a callous and degrading disregard for the dignity of arrested citizens entering the Booking area as pre-trial detainees and a cavalier attitude towards the civil rights and protections afforded citizens merely accused of committing crimes and being temporarily held as pre-trial detainees.

78.    After the aforementioned uses of force, minimal medical care or treatment, if any, was given to the assaulted arriving arrestee regardless of obvious and apparent injury and pain.  In some cases, even though the assaulted arrestee had suffered serious injuries, hours would pass before medical personnel would call to have the injured transported to the hospital.

79.     Such force in the aforesaid manner evidenced the habit, pattern, custom and usage by Correctional Officers within HCADC Booking of the intentional infliction of pain without justification on detainees, resulting in cruel and unusual punishment.

### THE FLOOR SHOWS

80.     Corrections Officers working in Booking also had what was referred to as "Floor Shows", which involved a coded invitation extended to the other HCADC Correction Officers, Deputy Sheriffs and staff to come to Booking for special events called "floor shows."

81.     These "floor shows" involved Teel and other Corrections Officers in Booking putting on a "show" for the other officers present.  The "show" involved inhumane treatment of restrained detainees in a manner and means similar to physical and psychological torture, that was designed to terrify detained persons in Booking by the use of demeaning, dehumanizing, degrading activities and excessive, injurious force and threats including being beaten and/or choked to death.

82.     While the subject of the "floor show" was being abused, beaten, demeaned, threatened, terrified and tortured by the Correction Officers in Booking, the watching crowd of HCADC officers and staff would join in with insults, sarcastic comments, derogatory remarks and even laughter in response to the cries of agony of the abused detainee that were evidenced by pain-filled yells, yowls, moans, and screams.

83.     After the aforementioned uses of force, minimal medical care or treatment, if any, was given to the assaulted arriving arrestee regardless of obvious and apparent injury and pain.  In some cases, even though the assaulted arrestee had suffered serious

injuries, hours would pass before medical personnel would call to have the injured transported to the hospital

84.    Such force in this manner evidenced the habit, pattern, custom and usage by Correctional Officers within HCADC Booking of the intentional infliction of pain without justification on detainees, resulting in cruel and unusual punishment.

### THE SLEEPER GAME

85.    Teel and other Corrections Officers in Booking would play the "Sleeper" game with intoxicated detainees held in Booking.

86.    The "Sleeper" game involved a Corrections Officer grabbing an intoxicated detainee (usually in the shower with no video recording), placing one arm around the detainee's neck and then locking both hands together in a choke hold. The Correction Officer would then tightly squeeze the detainee's neck until the detainee 'blacked out' (from lack of oxygen to the brain), after which the Corrections Officer would hold up the 'passed out' detainee until the he/she regained consciousness. When the choked drunken detainee 'woke up', the Corrections Officer would say, "Why are you falling asleep?", "Wake up!" and/or similar words to that effect. Then the Corrections Officer would repeat the process causing the restrained and helpless detainee to black out again, to the amusement of the Corrections Officers. The process would be repeated upon the whim of the participating Corrections Officers regardless of the risk to the drunken detainee chosen as the "Sleeper."

87.    After the aforementioned uses of force, minimal medical care or treatment, if any, was given to the assaulted arriving arrestee regardless of obvious and apparent injury and pain. In some cases, even though the assaulted arrestee had suffered serious

injuries, hours would pass before medical personnel would call to have the injured transported to the hospital

88.    Such force in this manner evidenced the habit, pattern, custom and usage by Correctional Officers within HCADC Booking of the intentional infliction of pain without justification on detainees resulting in cruel and unusual punishment.

## THE NO HABLOES

89.    Teel and other Corrections Officers in Booking referred to Spanish speaking detainees as the "No Habloes."

90.    These non-English speaking detainees were routinely abused, harassed, intimidated and threatened.

91.    "No Habloes" would be instructed (by means of subtle hand signals) to step towards the Correction Officers while putting their hands up over their heads, after which the Correction Officers would respond by punching, kicking and using other untoward, unnecessary and excessive injurious force against them.  The video cameras recording these incidences in Booking would then reflect these detainees stepping towards the Corrections Officers while raising their hands which the Corrections Officers would assert justifying their actions by claiming they were defending themselves.

92.    After the aforementioned uses of force, minimal medical care or treatment, if any, was given to the assaulted arriving arrestee regardless of obvious and apparent injury and pain.  In some cases, even though the assaulted arrestee had suffered serious injuries, hours would pass before medical personnel would call to have the injured transported to the hospital.

93.    Such force in this manner evidenced the habit, pattern, custom and usage by Correctional Officers within HCADC Booking of the intentional infliction of pain without justification on detainees resulting in cruel and unusual punishment.

## THE SHOWER

94.    Teel and other Correction Officers routinely used the shower facility within Booking for special purposes.    Although designed for use as a shower and secluded area where in-processing persons could change clothes and be searched (especially females), the Correction Officers used the "shower" for their own special purposes.

95.    The Corrections Officers knew there were no video surveillance cameras in the shower.

96.    The Corrections Officers used the lack of surveillance cameras in the shower to their advantage in order to avoid video documentation of their most brutal, sadistic and savage uses of injurious excessive force.

97.    Corrections Officers would escort a selected detainee into the shower where they would savagely punch, strike, kick and otherwise beat and physically abuse the unlucky detainee.

98.    When a detainee was being beaten and abused inside the shower, Correction Officers abusing them would shout, "Quit resisting, Quit resisting!", although the detainee being beaten was not resisting.

99.    Corrections Officers outside the shower would join in the refrain also shouting, "Quit resisting, Quit resisting!"

100.    When satisfied that the detainee had received enough "Get Right" or punishment, the detainee would be dragged out of the shower and thrown into a holding cell or sometimes left lying moaning and bleeding on the Booking room floor as an "example" to others who might get smart, mouth off, want to fight or otherwise in any manner attempt to challenge the authority of the Corrections Officers.

101.    Often, so much blood and other bodily fluids remained on the floor of the shower or elsewhere after an inmate beating that an inmate trustee would be required to mop up the mess.

102.    After a detainee was abused in this manner, minimal medical care or treatment, if any, was given to the assaulted arriving arrestee regardless of obvious and apparent injury and pain.  In some cases, even though the assaulted arrestee had suffered serious injuries, hours would pass before medical personnel would call to have the injured transported to the hospital

103.    Such force in this manner evidenced the habit, pattern, custom and usage by Correctional Officers within HCADC Booking of the intentional infliction of pain without justification on detainees resulting in cruel and unusual punishment.

## SPRAY THE BITCH

104.    When females were brought into the shower to be searched and change into the required attire for incarcerated persons, they would be escorted by female Correctional Officers.  While in the showers, the male Correctional Officers would listen for any indication that the female detainee did not immediately comply with female Corrections Officer's commands.  Upon any indication of any non-compliance, Teel, Teel and other Correctional Officers would immediately shout, "Spray that Bitch. Go on spray

her.  Spray the Bitch! Spray her now...." and/or similar words to encourage the female Corrections Officers within the shower to spray the naked or partially clothed female detainee with Mace, pepper spray or similar pain inducing aerosol chemicals.

105.    Teel and other Corrections Officers encouraged the aforementioned completely unnecessary use of unjustified, painful and excessive use of force for their own purposes and to encourage their fellow female Corrections Officers to follow their lead by routinely abusing and employing unnecessary force on non-compliant and/or verbally aggressive detainees who were not a threat.

106.    Encouragement to use such force in this manner evidenced the habit, pattern, custom and usage by Correctional Officers within HCADC Booking of the intentional infliction of pain without justification on detainees resulting in cruel and unusual punishment.

107.    Such encouragement of the use of force in this manner evidenced the habit, pattern, custom and usage by Correctional Officers within HCADC Booking of the intentional infliction of pain without justification on detainees resulting in cruel and unusual punishment.

### USE YOUR WHOLE BODY TO MAKE ME FEEL GOOD

108.    Teel and other Corrections Officers would use all manner of derogatory terms and make all manner of demeaning comments to intimidate and terrify detainees within Booking.

109.    The aforementioned statements where specifically designed to instill fear and grave concern upon the listener.

110.    While in the shower with detainees, Correction Officers would routinely make comments about sexually related matters and comment about the disrobing detainees while detainees were required to change clothes in front of them and their persons searched.

111.    Teel and others would also state, "I'm going to use your whole body to make me feel good" and/or similar words to that effect.    Often, after this particular comment, depending upon the response of the detainee, the detainee would be physically abused with use of excessive and unjustified injurious force.

112.    Such force in this manner evidenced the habit, pattern, custom and usage by Correctional Officers within HCADC Booking of the intentional infliction of pain without justification on detainees resulting in the intentional infliction of cruel and unusual punishment.

### YARD CALLS

113.    Another example of the habit, pattern, custom and use of excessive force within the HCADC was the use of "Yard Calls." "Yard Calls" were similar to "Floor Shows" in Booking, but involved taking a prisoner to the enclosed and secured area of the HCADC outside of the main facility.   Once outside with the prisoner, Correction Officers and others would participate in what was generally termed "get right" as pay back against the prisoner for some alleged offense, procedural violation or personal affront.

114.    During "Yard Calls" the prisoner would be beaten, kicked, punched and otherwise physically assaulted by anyone and everyone present and then taken back and thrown into a cell.

115.    After a "Yard Call," no medical care or treatment was given to the prisoner regardless of obvious and apparent injuries.

116.    Such force in this manner evidenced the habit, pattern, custom and usage by Correctional Officers within HCADC Booking of the intentional infliction of pain without justification on detainees, resulting in cruel and unusual punishment.

## FAILURE TO PROPERLY TRAIN AND SUPERVISE

117.    The above described widespread practices of abuse and the specific incident involving the brutal beating of Seal were a direct result of Sheriff Payne and/or other final policy making officers under him failing to properly train and/or supervise the Corrections Officers and their supervisors.

118.    Some of officers who pled guilty or who were found guilty of committing these abuses at the HCADC advised the Court, during sentencing, that their training was minimal and wholly inadequate.

119.    Melvin Brisolara was quoted in a newspaper article, as stating, in reference to training of guards, that "They've had more training in the past year than was officered in the last decade." Sun Herald, February 12, 2009.

120.    With proper training, these abuses in Booking could not have occurred to the extent that such abuses became widespread and persistent practices.

121.    Such abject failure by the Sheriff and/or other final policy making officers, to properly train and/or supervise his Corrections Officers and their supervisors constituted deliberate indifference to Seal's and other detainees safety, welfare and their constitutional protections, privileges, immunities and rights and directly resulted in the

29

"very disturbing pattern concerning misuse of force" as found by Steve J. Martin and reported to the U.S. Department of Justice in his report dated February 1, 2005.

122.    The direct actions and knowledge of the Sheriff and his subordinates with final policy making authority intentionally allowed this abject lack of training and/or supervision to become so pervasive, endemic and well settled within the HCADC as to constitute a custom and policy.

123.    Sheriff George Payne and the Harrison County Board of Supervisors had been put on notice by the U.S. Department of Justice of concerns of "misuse of force" in as of February 1, 2005 and again in the summer of 2005, and instead of ensuring proper oversight and supervision of his Corrections Officers, he intentionally chose to ignore and/or condone and acquiesce in the continuing abusive actions towards detainees within the HCADC.

124.    Rick Gaston and Steve Campbell not only acquiesced in the continuing abusive actions towards detainees within the HCADC, but also encouraged, participated in and/or covered up these abusive and injurious actions by their officers.

125.    Sheriff Payne, Campbell and Gaston all had personal knowledge and/or participation in the lack of proper supervision and training and were aware of the continuing misuse of force by Correction Officers within the HCADC.  In spite of such knowledge, these county officials failed to take any action that would change or prevent such conduct in the future.

126.    And now having set forth the known facts and credible evidence concerning the conspiratorial custom, habit, pattern and usage of unnecessary, excessive injurious force, at all times relevant and material to this Complaint, and having set forth

known facts and provable evidence concerning the improper hiring, lack of required training and complete failure to supervise the Corrections Officers of the HCADC, and having set forth the conspiratorial actions of officials of Harrison County with final decision making authority and the conspiratorial actions of county officials demonstrating deliberate indifference to the constitutional rights and medical needs of injured and abused pre-trail detainees, your Plaintiff reaffirms these allegations and incorporates each and every allegation and Defendant in his Specific Statement of the Facts.

## SPECIFIC STATEMENT OF THE FACTS

## ARREST AND DETENTION OF SEAL

127.    On or about September 4, 2005 Plaintiff, William David Seal was arrested on suspicion of violation of law for committing a misdemeanor crime (specifically, the violation which lead to his being arrested was making harassing phone calls to the Gulfport Police Department) and transported to the Harrison County Adult Detention Center (HCADC) where he was booked into custody.   He was not injured when he arrived except that he had a cut on his left cheek.

128.    After arrival at the HCADC intake area as an arrestee, Seal held the legal status of a "pre-trial detainee." He had not been convicted of the crimes for which he was charged and had not been sentenced to any period of incarceration as punishment for such crimes. Seal was not a convicted offender for these charges.  He was not incarcerated for any judicially sanctioned punishment.  He was merely being held on suspicion of committing a crime.

31

## SEAL ASSAULTED AND INJURED / TAUNTING AND HUMILIATION

129.    While being detained in Booking, Seal requested medical treatment for his injury, a gash on his cheek below his left eye, sustained during his arrest.

130.    Corrections Officers did not call for a nurse, but responded stating, "Well, we'll just pout some alcohol on it" or similar words to that effect.

131.    Seal, a medical professional, was shocked and outraged by this suggestion, as he was aware such 'treatment' by the Corrections Officers would be painful and only make his injury worse.  Seal protested about what the Corrections Officers were planning to pour on his wound, when one of the Corrections Officers, believed to be Defendant Preston Wills, assaulted him.

132.    In the Report prepared by Ron Werby (investigator for HCADC) he found that two officers he interviewed (Officer Wills and Officer Thompson) used force against Seal.  Werby reported to having watched the video of the incident and noted that he saw Seal's hand move toward Officer Thompson.  He then found that Officer Wills used "brachial plexus stun" on Seal and that several other officers (believed to be Officer Teel and Officer Thompson) then "took him to the ground".

133.    No use of force reports were filed by any of the officers and no video tape of the incident has been produced.

134.    Seal recalls that his face was slammed to the ground and that an officer grabbed him from behind in a choke-hold.  He could not breath and he lost consciousness.

135.    Seal thought he was going to die from the attack.

136.    After regaining consciousness, Seal was then forced to remove his clothing.  When removing his pants, the Defendant Corrections Officers laughed saying "Ah look, we made him crap himself" or words to that effect.  Seal was humiliated and was not allowed to clean himself.  He was told to put on the orange jump suit despite his soiled undergarments.

137.    Seal was then placed in handcuffs.  He recalls one of the officers saying "put them on as tight as they can go" or words to that effect.

138.    Seal was then put in a cell where he passed out.  Seal remembers an inmate in his cell commenting that his hands were purple from the handcuffs being so tight and yelling out to a guard to loosen the cuffs.  Seal was afraid and asked the inmate to be quiet.

### SEAL DENIED NEEDED MEDICAL ASSISTANCE

139.    After his sadistic abuse and brutal beating, Seal's injuries were plainly obvious and observable to anyone looking at him.

140.    His need for immediate medical care, assistance and treatment was plainly obvious and observable to anyone looking at him after the savage assault upon him.

141.    Medical personnel on duty (who had been hired by Harrison County) were present, saw Seal within moments after the savage assault upon him, and would have observed his gross injuries, heard his complaints of pain and suffering, heard his requests for medical assistance and only provided minimal medical care and assistance for him in the form of saline swab and bandage and to inform the Corrections Officers that he (Seal), "Needed to go out."

33

142.    The Corrections Officer informed Seal that "no transportation" was available for him to "go out". There is no indication in the documents provided to suggest that the nurse at HCADC did anything to provide needed care or assistance to Seal.

143.    Corrections Officers were present, saw Seal after the assault upon him, observed his injuries, heard his complaints of pain and suffering, hearing his requests for medical treatment, but Seal was not transported out for medical care until approximately 1300 on September 5, 2005. At or around this time, he was transported to the Emergency Room at Memorial Hospital at Gulfport.

144.    At the Emergency Room, his wounds were cleaned and sutured.

145.    Sometime after his brutal beating, while still in Booking, Corrections Officers moved Seal into a cell. While in the cell he was denied necessary sustenance in that he was denied any water.

146.    When Seal returned from MHG, he had a bottle of water with him, but he was not permitted to bring it with him and he was not provided a cup. Therefore, he went without water until the next day (September 6, 2005).

**SEAL HELD UNTIL SEPTEMBER 6 AND THEN RELEASED**

147.    The Reports filed at the HCADC indicate that Seal was discharged from HCADC on September 6, 2005 (at 1825). At no time was his picture taken, were his fingerprints taken, was he permitted to make a phone call or was bond posted for him.

148.    Seal was never officially booked, and the charges against him were either not officially filed or they were dropped.

**SEAL'S PERMANENT INJURIES AND DAMAGES**

34

149.    During the assault upon him, he suffered serious, significant, immediate and painful injury to his whole body including his face, and a gash was opened over his left eye with a deep and wide "L" shaped laceration.

150.    This force was without justification.

151.    The multiple strikes by fists, feet, elbows and hands were on a restrained person.

152.    The injurious blows and choking were not in self-defense.

153.    The injurious blows and choking amounted to an assault and battery and cruel and sadistic behavior.

154.    The actions of the named Defendant Corrections Officers were sadistic in nature and for the sole purpose of exacting corporal punishment and revenge and/or other satisfaction for some insult/offense they believed Seal had committed.

155.    Seal suffered and still suffers from serious, significant and permanent injuries, life altering impairments and mental and physical disabilities as a direct result of the brutal beating he received on or about September 4, 2005 at the hands of the named Defendant Corrections Officers.

156.    His suffering was compounded by the lack of and/or significant delay of needed medical care, treatment and attention.

157.    As a direct consequence of his severe and brutal beating in the HCADC, Seal suffered and suffers from painful and disabling conditions.

158.    Since his severe and brutal beating in the HCADC, and directly from and as a consequence of these debilitating injuries and related impairments, Seal has been ble

to maintain his profession as a nurse.  However, he has lost income related to the incident and the treatment of his injuries.

159.    Since his severe and brutal beating in the HCADC, and directly from and as a consequence of these injuries and related impairments, Seal has endured significant pain and suffering.

160.    Since his severe and brutal beating in the HCADC, and directly and as a consequence of the debilitating injures and related impairments, Seal suffers from physical scarring above his left eye, which continues to affect him to this day.

161.    Since his severe and brutal beating in the HCADC, and directly and as a consequence of the debilitating injuries and related impairments, Seal suffers from mental impairments for which he has received medical treatment and for which will require future medical treatment.

## CONCLUSION

The brutal beating and subsequent abuse of your Plaintiff, William David Seal, cries out for justice.  Seal suffered a devastating life altering event at the hands of sadistic and cruel jailers.  He was brutally beaten, abused, taunted and terrorized by Corrections Officers in Booking after being taken to the Harrison County Adult Detention Facility. He was denied needed medical care and treatment by these same officers and present medical staff.  Because of this, he will never be the same.  When he complained to officers running the Harrison County Adult Detention Center, they blamed Seal for what happened to him and further took no action against the Corrections Officers who beat, humiliated and mistreated him.  These officers showed zero remorse for Seal's injuries and suffering and further deceitfully and falsely participated in a conspiracy to conceal

and cover-up what really happened to Seal in Booking. Unfortunately, Seal was not the exception as evidenced by the numerous abuses and injuries suffered by other detainees held in Booking. The intentional abuse, brutal beating, taunting and terrorizing, denial of medical care and humiliation he suffered was not an unusual event within Booking. A conspiratorial culture of cruelty existed within Booking (known as the "House of Payne"). Prior to his beating, numerous Harrison County officials had knowledge of the ongoing abuses at the HCADC, but the Harrison County officials took no action. The lack of action and tolerance of abuse created and fostered a custom and policy of abuse, misuse of force and intentional injury and deprivation of constitutional rights to pre-trial detainees, like your Plaintiff Seal.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, the Plaintiff, William David Seal, respectfully requests that a timely trial be granted to present the abundant evidence and eye-witnesses testimony concerning the abusive and injurious actions of these Defendants against him and at the conclusion of the requested trial that this Honorable Court enter a judgment as follows:

(1)     Against the Defendant Harrison County and those named Defendant officers acting under color of state law, jointly and/or severally, in an award for all actual and compensatory damages, past, current and future, for and from the injuries, disabilities and suffering sustained by the Plaintiff, William David Seal.

(2)     Against the named Defendants, jointly and severally, for all Plaintiff's reasonable attorney's fees pursuant to 42 USC § 1988 and all associated allowable costs, related litigation expenses and recoverable expert witness fees.

(3)     Against the named Defendants for other such relief as this Honorable Court may deem necessary, appropriate, equitable and just under the circumstances of this action.

RESPECTFULLY SUBMITTED, this the 27 day of February, 2009.

William David Seal, Plaintiff
By His Undersigned Counsel

By:     _____
Patrick R. Buchanan
Michael E. Bruffey

Patrick R. Buchanan, Esq. (MSB No. 8439)
Michael E. Bruffey, Esq. (MSB No. 9799)
Steven B. Dick, Esq. (MSB No. 99566)
Brown Buchanan, PA
796 Vieux Marche, Suite 1
Biloxi, MS  39530
tel: 228-374-2999
fax: 228-435-0035
mailb@brownbuchanan.com
meb@brownbuchanan.com
sbd@brownbuchanan.com

Robert G. Harenski, Esq. (MSB No.10037)
P.O. Box 4961
Biloxi, MS  39535
Phone:  228-669-9700
E-Mail:  harenskilaw@yahoo.com

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that I have this day electronically filed a true and correct copy of the foregoing pleading with the Clerk of Court using the ECF system which sent notification of such filing to the following counsel:

Karen Jobe Young
Meadows Law Firm
Post Office Box 1076
Gulfport, MS  39502

Cyril T. Faneca
Haley Necaise Broom
Joe Crawford Gewin
Dukes, Dukes, Keating & Faneca
Post Office Drawer W
Gulfport, MS  39502-0680

Ian A. Brendel
James L. Davis III
Post Office Box 1839
Gulfport, MS  39502-1839

George D. Hembree III
McGlinchey Stafford
Post Office Drawer 22949
Jackson, MS  39225-2949

Robert H. Pederson
Watkins & Eager
Post Office box 650
Jackson, MS  39205-0650

SO CERTIFIED, this the 27 day of February, 2009.

Patrick R. Buchanan
Michael E. Bruffey