# EXHIBIT  G

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**WILLIAM DAVID SEAL** **PLAINTIFF**

**V.** **CIVIL ACTION NO. 1:08CV175-LG-RHW**

**HARRISON COUNTY, MISSISSIPPI BY AND THROUGH ITS BOARD OF SUPERVISORS; GEORGE PAYNE; WAYNE PAYNE; DIANE GASTON RILEY; STEVE CAMPBELL; RICK GASTON; RYAN TEEL, PRESTON WILLS, CORRECTIONS OFFICERS JOHN DOES 1-2; AMERICAN CORRECTIONS ASSOCIATION; JAMES A. GONDLES, JR.; AMERICAN CORRECTIONS ASSOCIATION EMPLOYEES JOHN AND/OR JANE DOES 1-3,; HEALTH ASSURANCE LLC; HEALTH ASSURANCE, LLC EMPLOYEES JOHN AND/OR JANE DOES 1-2** **DEFENDANTS**

STATE OF MISSISSIPPI
COUNTY OF HARRISON

**<u>AFFIDAVIT OF GIBRAN WERBY</u>**

PERSONALLY CAME AND APPEARED BEFORE ME the undersigned authority in and for the County and State aforesaid, the within named, GIBRAN WERBY, who, after first being duly sworn by me on his oath, did depose and state the following:

1. My name is GIBRAN WERBY , and I am over the age of twenty-one (21) years. I was a Task Force Agent with the Federal Bureau of Investigations beginning in 2003 until 2006, I was also an investigator with the Professional Standards unit at the Harrison County Sheriff's Department from 2001 to 2003. During the relevant time period the Harrison County Adult Detention Center was suffering from loss of personnel, electricity, water and was operating on a very limited number of staff due

EXHIBIT
"E"

to Hurricane Katrina. As a Task Force Agent with the Federal Bureau of Investigations, I was given a month off from my normal duties with the Federal Bureau of Investigations, at which time I was contacted by the Harrison County Sheriff's Department to assist in some investigations at the Harrison County Adult Detention Center. I have personal knowledge of the matters and facts contained in this Affidavit and I am competent to testify to the matters stated herein.

2.     When assisting the Professional Standards unit at the Harrison County Adult Detention Center, I was charged with the primary responsibility of investigating the complaints of alleged employee misconduct and complaints of excessive use of force by Harrison County Sheriff's Department officers. If the alleged incident occurred in the Harrison County Adult Detention Center booking department, my usual and customary practice would be to view surveillance recordings of the booking room at the applicable time.

3.     On September 19, 2005, Harrison County Professional Standards OIC, Captain Steve Campbell, at the direction of Sheriff George Payne, Jr., instructed me to investigate the emailed complaint of William David Seal, dated September 10, 2005. As part of my investigation, I interviewed a Preston Wills, nurse Rita Parker, Plaintiff Seal, Captain Phil Taylor, examined related medical/HCADC records and a digital video recording of the incident occurring on September 4, 2005.

4.     Specifically, on September 27, 2005, myself along with Captain Campbell viewed the digital video, and I observed Thompson standing to the left of the Plaintiff, and Wills to his right. Both of Plaintiff's hands were on the booking counter, and then Plaintiff moved his left arm/hand from the booking desk and struck Thompson.

Page 2 of 4

Wills then responded by applying a brachial plexus stun to Plaintiff, and then several deputies restrained Plaintiff to the ground and cuffed him.

5.    Upon completion of my investigation, I concluded that Seal was continuously disorderly to deputies during the booking procedure and that he attempted to strike a booking deputy. I also concluded that booking deputies used force to restrain Seal and followed procedures as outlined in the Policies and Procedures. Therefore, I concluded William David Seal's complaint of the alleged use of excessive force was unfounded, along with his other allegations; including confirmation with Captain Phil Taylor that Plaintiff had running water to the sink his cell during the time he was incarcerated.

6.    As an Investigator with the Professional Standards unit at the Harrison County Sheriff's Department, I was trained and had first hand knowledge of the policies and procedure that were in place at the Harrison County Adult Detention Center, on or about September 4, 2005, including the use of force policy. See Use of Force policy attached hereto as **Exhibit "1"**.

7.    In my review of the digital video, at no time during this incident did Wills, Thompson or any other deputy present, assert more force than was absolutely necessary to regain order and control of the situation with Seal.

8.    I do not have a copy of this digital recording nor did I ever receive a copy of this digital recording.

9.    Upon conclusion of my investigation, I have no knowledge of what happened to the recording of Mr. Seal's booking at the Harrison County Adult Detention Center.

10.    Pursuant to General Order #65, files of all my internal investigations were maintained

Page 3 of 4

at the HCADC. I have attached hereto as **Exhibit "2"** relevant portions of the investigative file of case number IA2005-25, which involve the investigation into Plaintiff's booking at the Harrison County Adult Detention Center, and specifically the conduct of Deputy Thompson and Deputy Wills, **Exhibit "3"** is the Internal Affairs Report dated September 27, 2005, which I prepared.

I certify the above declaration is true and correct under penalty of perjury.

_____
Affiant/Gibran Werby
Harrison County, Mississippi

Sworn to and subscribed before me on this the 4th day of ~~September~~ November, 2009.

_____
Notary Public

My Commission Expires:
_____

(SEAL)

*Harrison County Adult Detention Center*
*Policy & Procedures Directives*

# USE OF FORCE

**POLICY:**    All Corrections Officers assigned to duty in the Detention Center will use only those amounts of physical force necessary to maintain or regain control of an inmate. Use of force is clearly different from physical punishment that is not tolerated under any circumstances. In no event will physical force be considered justifiable as punishment.

**PROCEDURE:**    In order to give an inmate every opportunity to cease his or her disruptive or aggressive behavior and cooperate, the **Use of Force Theory** documented in **general Order # 10, 4,** will be followed, excluding Deadly Force (i.e., within the confines of the Detention Center.)

**I.    GENERAL INFORMATION:**

**General Order # 10,4**

**Use of Force Theory:**  Five categories of force applicable for corrections environment:

1)    Dialogue            2)    Escort Technique    3)    Pain Compliance
4)    Mechanical Control  5)    Impact Weapon

Physical force will only be used as a last resort to control inmates.

All Corrections Officers will be trained in the proper application of physical force techniques.

**II.    Oleoresin Capsicum**

In the corrections environment, the use of Oleoresin Capsicum (O.C. Spray) may be used before or after Pain Compliance with any inmate who fails to comply with verbal orders and the inmate is yet uncontrollable. Only officers that are properly trained will be authorized use of O.C. Spray. Under no circumstances will O.C. Spray be used on an inmate while in approved

EXHIBIT
"E-1"

Page 1 of 4

restraints or behind a locked cell door. The effects may mask or cover other medical conditions such as allergies, heart conditions, lung problems, diabetes, and overdoses resulting from high toxic levels of drugs like Cocaine, Amphetamines, Barbiturates, PCP, Opiates, Heroin or Alcohol. Chemical agents like O.C. Spray is considered and intermediate use of force alternative.

## III.    Special Circumstances

In unique circumstances where verbal dialogue has failed or has proven to be impractical, staff may be forced to make a decision, such as whether to use force on a pregnant inmate or an aggressive inmate with open cuts, sores, or lesions. Special cases such as mentally ill, handicapped, or pregnant inmates must be carefully assessed by the Shift Supervisor or above, to determine whether the situation is critical enough to require the use of physical force.

**Pregnant Inmates** – When restraints become necessary for pregnant inmates, precautions to ensure the fetus is not harmed will be taken. Medical staff will be summoned immediately to decide whether the inmate's restraints are feasible for her condition, or whether the inmate would be safer restrained in the medical area.

**Inmates with Wounds or Cuts** – Aggressive inmates with open cuts or wounds who have attempted to harm themselves or others should be carefully approached , with staff wearing protective gear.

## IV.    MEDICAL EXAMINATION

Medical Staff will be immediately contacted to examine an inmate involved in an incident requiring the use of force which resulted in injury. An inmate's refusal or acceptance of an examination must be noted on the Incident Report. If injuries occurred, medical attention will be provided for the injured party.   Force or restraint may be used when ordered by physician or his designee in order to allow medical staff to administer medical treatment deemed necessary. The force or restraint must be under the direct supervision of a physician & only when treatment is necessary to protect the health of other persons, as in the case of contagious disease or to protect the inmate against self-inflicted injury or death.

## V.    CLEAN-UP

Any area where there is spillage of blood, or other body fluids, will be sanitized immediately upon the authorization of the Shift Supervisor or above. However, the supervisor must first make the determination whether there is need to preserve evidence.

---

Page 2 of 4

All blood and body secretions should be immediately removed and placed in an appropriate waste disposal container and the area washed with a disinfectant. In addition, any clothing that have been contaminated with these fluids, including the equipment and clothing of staff involved in the use of force, should be immediately disinfected or destroyed, as appropriate (Note: Assistance from the Medical area will be sought to assure proper handling of hazardous waste)

## VI.    DOCUMENTATION

Each officer involved will document force applied at any level on a Narrative Form. Officer viewing the use of force may be asked to write a narrative depending upon the circumstances. Complete narratives will be submitted to the Shift Supervisor at the conclusion of the shift.

**Use of Force Situations:** It is generally recognized that Corrections Officers have a right to use force as it relates to five situations.

1. Self- Defense: Correctional Officers may use force in their self-defense.

2. Defense of Third Party: Correctional Officers may use force in the defense of a third person, including another staff person, an inmate, or a visitor.

3. Prevention of a Crime: Correctional Officers may use force to prevent the commission of a crime within the facility.

4. Prevention of an Escape: Correctional Officers may use force to prevent an escape.

5. Enforcement of Detention Rules: Correctional Officers may use force in the enforcement of facility rules and regulations.

Force is intended to be used as a control measure when necessary. It will not be used for punishment. In the Use of Force Theory it is not required that an officer use the previous level on the continuum. By necessity, the level of force needed is most often made based on a quick assessment of the potential danger of the situation and the resources available. Typically the lowest level of force that will most quickly effect resolution and neutralize the danger is used.
**All control force must cease as soon as the inmate is subdued, restrained or under control.**

## VII.          DEADLY FORCE

Firearms will only be used as a last resort to prevent an escape, to prevent life threatening injury to a person, to prevent hostages from Being taken or to quell a major disturbance. A verbal order to stop must be issued before a shot is fired. Firearms will not be discharged in any case where there is reason to believe that the life of an innocent bystander will be endangered.

Only employees with current certification will be allowed to carry firearms. No Corrections Officers will carry firearms or weapons on his/her person, concealed or not unless acting within the scope of official duties for the HCADC. Except in emergency situations, officers carrying firearms are assigned to perimeter.


_Riley_                                        _01/01/01_
Facility Administrator                          Effective Date