**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**WILLIAM DAVID SEAL**                                                           **PLAINTIFF**

**V.**                                                    **CIVIL ACTION NO. 1:08CV175-LG-RHW**

**HARRISON COUNTY, MISSISSIPPI, ET AL.**                              **DEFENDANTS**

<u>**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR
SANCTIONS FOR SPOILIATION [216] FOR AND MEMORANDUM [217] IN
SUPPORT THEREOF**</u>

COMES NOW, Defendant George Payne, Jr., in his official capacity as former Sheriff of

Harrison County, Mississippi, by and through his attorneys of record, Dukes, Dukes, Keating &

Faneca, P.A., and submits this, his Response in Opposition to Plaintiff's Motion for Sanctions for

Spoliation [216] and Memorandum in Support Thereof [217], and would show unto the Court the

following, to-wit:

**I.      INTRODUCTION OF FACTS**

Plaintiff was booked into the Harrison County Adult Detention Center ("HCADC") in

September 2005, when the Harrison County Sheriff's Department ("HCSD") was under the

administration of the Defendant, George Payne, Jr. and Steve Campbell was assigned as Director of

Internal Affairs.  As relayed in Ron Werby's 30(b)(6) deposition, Ron Werby did an investigation

into the incident involving Plaintiff and looked at the digital recordings of Plaintiff's booking and

wrote an internal affairs report. (<u>See</u> **Exhibit "A"**, Werby Depo. T. 13 and 30).

Additionally, Werby acknowledged he interviewed the correctional officer and nurse,

however he did not tape-record those interviews.  (<u>See</u> Werby Depo. T. 16 and 19).  Werby made

handwritten notes of the interviews and those notes have been produced to Plaintiff.  (<u>See</u> Werby

Depo. T. 19). Werby was not aware nor responsible for the storage of the videos. (See Affidavit of Ron Werby attached hereto as **Exhibit "B"**; Werby Depo. T. 33).

In regards to digital surveillance footage of the booking room, if it was not either stored on the hard drive of the computer or copied onto a DVD, as more thoroughly explained in Kevin Fayard's and Steve Campbell's affidavits, the video data would be stored in a temporary file and would eventually be overwritten by new data. (See Affidavits attached hereto as **Exhibits "C" and "D"**). As testified to by Captain Campbell, if he received a complaint and was doing an investigation into said complaint, he did not always burn the footage onto a DVD, but rather he would store the video images to his hard drive on his desktop (PC 2). (See Campbell Depo. p. 34 L. 1-9). Those images would never be deleted, as it was his policy to retain everything. (See Campbell Depo. p. 121 L. 4-18). Captain Campbell specifically testified that he kept everything on his hard drive "forever", and stated that if he were still with the HCSD, he would still have these data. (See Campbell Depo. p. 121 L. 25; p. 122 L. 1-7).

Captain Campbell was placed on administrative leave on March 8, 2007, and remained on administrative leave until approximately January 2008 when he retired. (See time sheets attached hereto as **Exhibit "E"**; Campbell Depo. p. 7 L. 6-10). Upon the departure of Captain Campbell, Kevin Fayard was assigned to the position of Director of the Professional Standards Unit for the HCSD. In a good faith effort to retain all of Captain Campbell's investigative files, Kevin Fayard transferred all the information stored by Campbell on his personal computer to a backup file. (See Kevin Fayard Affidavit). Defendant Payne has produced all of this information to the Plaintiff in this case. (See correspondence attached hereto as **Exhibit "F"**).

The desktop computer referred to as "PC 2" (Gateway, Model #MFATXSTLELP 500c, Serial

#0025623850), which was located in the Professional Standards Unit's director's office and was utilized as a digital video server access computer, was no longer being used in or about June or July 2009 because all video servers to which PC 2 was connected were no longer in service. (See Kevin Fayard Affidavit). Therefore, without maintaining a copy, Kevin Fayard requested the HCSD IT department to remove the computer from his office and erase its HDD prior to reissuing it to another division or selling it at auction. Since Kevin Fayard was taught how to burn any surveillance videos directly to DVD, at that particular time, he assumed that any relevant information on the computer would have already been saved and put in the applicable IA files, so he did not retain a copy of the materials. (See Kevin Fayard Affidavit). To this date, Kevin Fayard has not attested to whether videos were actually stored by Campbell in a permanent file on this PC 2. However, as evidenced by correspondence attached hereto, Defendant Payne, through his counsel of record, has been diligent in attempting to determine if copies of any and all video footage which was stored on PC 2 were made and seized by the Department of Justice during its previous investigation, and if so, if copies may be obtained from the United States Department of Justice. (See correspondence of Sept. 18, 2009, Oct. 2, 2009, and Oct. 7, 2009, collectively attached hereto as **Exhibit "G"**). Additionally, Defendant Payne has gone as far as to produce a photocopy which shows the computer nameplate data and felt pen notation which appeared on PC 2 to assist the Department of Justice in looking into this request. (See correspondence of Oct. 7, 2009). The undersigned is currently awaiting a determination by the Department of Justice as to whether they will assist us in obtaining a copy of the information stored on PC 2, as it is their belief that all computers were either seized or mirrored by the FBI.

## II.    STANDARD

Sanctions in regards to electronically stored information is specifically dealt with in Rule 37 (e) of the Federal Rules of Civil Procedure.    Specifically, Rule 37(e) provides that "absent exceptional circumstances, a court may not impose sanctions under these rules on a party for failing to provide electronically stored information lost as a result of the routine, good-faith operation of an electronic information system".

A spoliation ruling is evidentiary in nature, and federal courts generally apply their own evidentiary rules in both federal question and diversity matters.    (See King v. Ill. Cent. R.R., 337 F.3d 550, 556 (5th Cir. 2003)).  The standard in the Fifth Circuit has been made clear in the seminal case of Vick v. Texas Employment Comm'n, 514 F.2d 734 (5th Cir. 1974).  An adverse inference based on the destruction of potential evidence is predicated on the "bad conduct" of the defendant. id.  "The circumstances of the act must manifest bad faith.  Mere negligence is not enough, for it does not sustain an inference of consciousness of a weak case."  *Id.* (citing McCormick, Evidence §273 at 660-61 (1972)**.**

A plaintiff is entitled to a jury instruction on spoliation only if the plaintiff can show that the defendant acted in bad faith or with bad conduct.  Mere negligence is not enough to warrant an instruction on spoliation.  See Russell v. Univ. of Texas, 234 Fed. Appx. 195 (5th Cir. 2007); See also Vick v. Texas Employment Comm'n, 514 F.2d 734, 737 (5th Cir. 1975); Condrey v. Suntrust Bank of Ga., 431 F3d 191, 203 (5th Cir. 2003); See also Pham v. Contico Int'l, Inc., 759 So.2d 880, 883-884 (La. App. 5 Cir. 3/22/00) (holding that intent is a necessary element of a claim for spoliation of evidence); Burge v. St. Tammany Parish, 336 F.3d 363 (5th Cir. 2003) (Plaintiff must show that the Sheriff's Office intentionally destroyed the evidence for the purpose of spoliation).

A spoliation instruction entitles the jury to draw an inference that a party who intentionally destroys important documents did so because the contents of those documents were unfavorable to that party.  Russell, 234 Fed. Appx. At 208; Vick, 514 F.2d at 737.

The adverse inference to be drawn from destruction of evidence is predicated on bad conduct of the defendant.  Typically, a court will not draw an inference of bad faith when documents are destroyed under a routine policy.  Vick, 514 F.2d at 737 (where there was an indication that the records were destroyed under routine procedures without bad faith and well in advance of Plaintiff's service of interrogatories).  In addition, courts do not automatically draw an inference of bad faith simply because documents are destroyed after the initiation of litigation.  Russell, 234 Fed. Appx. At 208; Vick, 514 F.2d at 737.

In Hodges v. Mosaic Fertilizer, LLC, 289 Fed. Appx. 4, 7 (5th Cir. La. 2008), "[on] review of pertinent portions of the record, the Court concluded that Appellants have failed to carry their burden of presenting evidence that shows the existence of a genuine issue of material fact as to spoliation of evidence.  Appellants argued that Mosaic intentionally destroyed the valve at issue for the purpose of depriving them of its use.  Appellants cited no evidence, other than their mere allegation, that tended to show that Mosaic intentionally destroyed the valve for that reason.  Therefore, the Court held that the district court correctly dismissed on summary judgment Appellants' spoliation of evidence claim.  See also Burge v. St. Tammany Parish, 336 F.3d 363, 373-74 (5th Cir. 2003) (Louisiana plaintiff presented no evidence that defendant intentionally destroyed evidence for the purpose of depriving plaintiff of its use)".

## III.    LEGAL ANALYSIS

In the case at bar, the record is absent of any bad conduct on the part of anyone, including

Defendant Payne.  What is clear in the record is that both Defendant Payne's and Steve Campbell's standard operating procedures was to save the Internal Affairs files as well as any and all digital recordings indefinitely.  The absence of "bad faith" is also evidenced by Steve Campbell's affirmative steps to preserve the digital recordings by saving them onto the hard drive of PC 2, because without doing so, all temporary files would have eventually been overwritten by new data cached to the HDD of the PC 2, and would therefore no longer exist.

As apparent by the affidavits attached hereto, a misunderstanding as to the maintenance of Internal Affairs documents and/or videos presented itself during the switch of the administration of the Harrison County Sheriff's Department.  Steve Campbell preserved this evidence and saved it onto the hard drive of the computer where he would leave it indefinitely for all purposes, including upcoming litigation.  Specifically as delineated above, the new director of Internal Affairs, Kevin Fayard, was not aware that Steve Campbell had, in fact, stored surveillance footage to a permanent file on PC 2 due to the fact that Fayard had burned all images onto DVDs from the start of his position.  Therefore, in or about June or July 2009, upon being advised all video servers to which PC 2 was connected were no longer in service, Kevin Fayard requested that the IT department remove it from his office and erase its HDD prior to reissuing it to another division or placing up for sale at auction.  As stated by Kevin Fayard in his affidavit attached hereto, "[i]t was, and is, the standard operating procedure of myself, Lieutenant Kevin Fayard, to 'wipe' and erase the hard drive of any computer containing confidential materials that is removed from service that may be sold at public auction, transferred to another department, or donated to another entity in order to prevent possible disclosure of confidential information to unauthorized parties".  It was clear by the record that Kevin Fayard was not acting in bad faith, but was rather taking security measures pursuant to

policy when he erased the information stored on the hard drive of PC 2. Additionally, as it relates to the misunderstanding between the server that crashed in January 2009 and PC 2, Kevin Fayard cleaned up any misunderstanding in his supplemental affidavit, as well as at his deposition.

Defendant Payne, would further state, by and through his attorneys of record, he has been diligently searching for these videos and/or for the reasons why they do not exist. At all times when information came to light, Defendant Payne has supplied such information through either an affidavit or a designated person with knowledge as to the relevant facts. Defendant's actions demonstrated not bad faith, but instead good faith in diligently attempting to locate and/or explain the absence of such information.

In regards to the alleged spoliation of the investigative file and recorded statements, Defendant Payne would state that Plaintiff's argument is misplaced. Ron Werby conducted the investigation into the Plaintiff's allegations and created a report. (See Werby Depo, T 13.) The IA report, as well as the entire IA file, has previously been produced to the Plaintiff. Despite Plaintiff's contentions that Defendant has not produced the recorded interviews from correctional officers or the nurses he interviewed, no such record exists. (See Werby Depo, T16 and 19). Werby did create handwritten notes when he conducted these interviews, and those notes were produced to Plaintiff in both discovery and well as at his deposition. (See Werby Depo. T19). Therefore, despite Plaintiff's assertion, there does not exist any tape-recorded statements or interviews of officers.

As evident by counsel's statement on the record, counsel for Defendant Payne received an audio tape of a conversation between Campbell and Seal prior to Campbell's 30(b)(6) deposition, and informed Plaintiff at the deposition. (See Campbell Depo. T6). At the deposition, the parties went off record and listened to this recording. Since then, a copy of the audio tape has been

produced to Plaintiff's counsel. According to Campbell's statements in the deposition, he had another audio tape of a prior conversation with the Plaintiff, however, Campbell is not in possession of same, nor does he know its location (See Campbell Depo. T. 115). After diligent search and inquiry, Defendant Payne has not been able to locate the second audio tape. As evident from Defendant Payne's testimony, Defendant Payne was of the belief that all investigative files, videos and tapes were kept indefinitely as part of the IA file, and all of which has been produced to Plaintiff. Therefore, there has been no bad faith on the part of Defendant Payne.

Based on the foregoing, Defendant Payne would assert that Plaintiff's Motion for Sanctions for Spoliation [261] lacks merit, and therefore should be denied.

WHEREFORE, premises considered, Defendant George Payne, Jr., in his official capacity as former Sheriff of Harrison County, submits this, his Response in Opposition to Plaintiff's Motion for Sanctions for Spoliation [216] and Memorandum of Authorities in Support thereof [217], and hereby moves this Honorable Court for and Order denying Plaintiff's Motion, based upon the foregoing, and for such other and further relief as may be appropriate under these circumstances.

RESPECTFULLY SUBMITTED, this the 20th day of November, 2009.

**GEORGE PAYNE, JR., IN HIS OFFICIAL CAPACITY AND HARRISON COUNTY SHERIFF'S DEPARTMENT, Defendant**

**BY:    DUKES, DUKES, KEATING & FANECA, P.A.**

BY:    */s/Cy Faneca*
         CY FANECA, MSB #5128

## <u>CERTIFICATE OF SERVICE</u>

It is hereby certified that via United States Mail, postage fully pre-paid, a true and correct

copy of the above and foregoing pleading has been delivered to the following::

        Robert Harenski
        Robert G. Harenski and Associates
        1906 Pass Road
        Biloxi, MS 39531

        Patrick R. Buchanan
        Mark Watts
        Brown Buchanan
        P.O. Box 1377
        Biloxi, MS 39533

Counsel for Harrison County:
        Karen J. Young
        Meadows Law Firm
        P.O. Box 1076
        Gulfport, MS 39502

Counsel for Wills and Thompson
        James L. Davis
        Ian A. Brendel
        Jim Davis, PA.
        P.O. Box 1521
        Gulfport, MS 39502

THIS, the 20th day of November, 2009.

                             */s/ Cy Faneca*
                             CY FANECA

Cy Faneca, MSB #5128
Joe C. Gewin, MSB #8851
Haley N. Broom, MSB #101838
**DUKES, DUKES, KEATING AND FANECA, P.A.**
Post Office Drawer W

Gulfport, Mississippi 39502
**Telephone:**     (228) 868-1111
**Facsimile:**     (228) 863-2886