IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| WILLIAM DAVID SEAL | § | PLAINTIFF |
| | § | |
| VERSUS | § | CAUSE NO. 1:08cv175-LG-RHW |
| | § | |
| HARRISON COUNTY, MISSISSIPPI, BY | § | |
| AND THROUGH ITS BOARD OF | § | |
| SUPERVISORS; HARRISON COUNTY | § | |
| SHERIFF GEORGE PAYNE, IN HIS | § | |
| OFFICIAL CAPACITY; CORRECTIONS | § | |
| OFFICER THOMAS PRESTON WILLS, | § | |
| ACTING UNDER COLOR OF STATE | § | |
| LAW; and CORRECTIONS OFFICER | § | |
| MORGAN THOMPSON, ACTING UNDER | § | |
| COLOR OF STATE LAW | § | DEFENDANTS |

**MEMORANDUM OPINION AND ORDER GRANTING WILLS AND
THOMPSON'S MOTIONS TO DISMISS, GRANTING IN PART
AND DENYING IN PART THEIR MOTION FOR SUMMARY
JUDGMENT, AND DENYING THEIR SECOND MOTION TO STRIKE**

BEFORE THE COURT are Defendant Thomas Preston Wills's Motion to Dismiss Plaintiff's 42 U.S.C. § 1985 and 42 U.S.C. § 1986 Claims for Failure to State a Claim Upon Which Relief can be Granted [239], Defendant Morgan Thompson's Motion to Dismiss Plaintiff's 42 U.S.C. § 1985 and 42 U.S.C. § 1986 Claims for Failure to State a Claim Upon Which Relief can be Granted [244], Wills and Thompson's Motion for Summary Judgment, Qualified Immunity [257], and second Motion to Strike [295]. Plaintiff William David Seal brought this action for the alleged abuse he received from Movants while in the custody of the Harrison County Adult Detention Center ("HCADC"). Movants argue (1) the First Amended Complaint fails to state a claim under Section 1985 and 1986, (2) Seal's injuries did not result from the use of force, (4) the force was not excessive, (5) Movants acted objectively reasonably,

(6) they were not deliberately indifferent to Seal's medical needs, (7) nor did he suffer injury as a result, (8) he was given hydration, (9) there was no agreement to assault him, and (10) he has not lost a civil action. Movants further argue that his Exhibits C-E and G-I are inadmissible on the conspiracy claims. The Court has considered the parties' submissions and the relevant legal authority. The Section 1985 and 1986 claims against Movants are dismissed without prejudice. The remaining motions are denied.

## FACTS AND PROCEDURAL HISTORY

On September 4, 2005, Seal was arrested by the Gulfport Police Department. As a result of the force used in that arrest, he sustained a laceration. He was taken to the HCADC. While being booked, he repeatedly asked for medical attention for his injury. Wills responded that he would pour some alcohol on it. Seal protested. Wills, Thompson, and other officers then took Seal to the ground, handcuffed him, and placed him in a cell. Later, a jail nurse examined Seal's injuries and told officers that he needed to go to the Emergency Room. He was not sent. The next day, the jail doctor examined Seal and again told officers that he needed to go to the hospital. He was then taken to the hospital.

Seal subsequently filed this lawsuit. He brings claims against Wills and Thompson under Sections 1983 and 1985 for excessive force, failure to provide medical care, denial of water, covering up the alleged abuse, and conspiracies to use excessive force and to cover up the alleged abuse.

## DISCUSSION

MOTIONS TO DISMISS

To survive a Rule 12(b)(6) motion to dismiss, Seal must plead "enough facts to state a

claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). This does "not require heightened fact pleading of specifics." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555-56. The Court must view the facts in favor of the plaintiff. *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002).

The complaint need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Bell Atlantic*, 550 U.S. at 555) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

### I.  SECTION 1985 CONSPIRACIES

Seal purports to bring conspiracy claims under Section 1985. Movants argue that the First Amended Complaint fails to state a Section 1985 conspiracy claim because it does "not describe the type of conspiracies proscribed by these statutes." (Wills's Mem. Dismiss at 1); (Thompson's Mem. Dismiss at 1). Seal responds that there is a genuine dispute of fact as to the conspiracies.

Section 1985 provides a cause of action for several types of conspiracies, under subsections one through three. 42 U.S.C. § 1985. Seal does not expressly cite to the portion or portions of Section 1985 on which he relies. Movants first argue that the First Amended Complaint fails to state a Section 1985(1) claim, because it does not allege they conspired to interfere with a federal official's performance of his duties. Subsection one provides:

If two or more persons in any State . . . conspire to prevent, *by force, intimidation,*

> *or threat*, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; *or to induce by like means* any officer of the United States to leave any State, district or place, where his duties as an officer are required to be performed, *or to injure him in his person or property* on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties
> . . .
> the party so injured . . . may have an action for the recovery of damages, occasioned by such injury . . . against any one or more of the conspirators.

42 U.S.C. § 1985(1), (3) (emphasis added).

The First Amended Complaint alleges that Movants conspired to conceal the abuse of Seal. Specifically, it is alleged that Movants "conspired to cover up the incident [by] failing to file Use of Force Reports." (1st Am. Compl. at 9 (¶18)). "After Seal's beating, Defendants participated in a conspiratorial scheme to camouflage, cover-up, falsely explain and/or deny what in truth and fact happened to Seal." *Id.* at 14 (¶45). There is no allegation, however, that this included a conspiracy to use force, intimidation, or threat of a federal official, or to injure a federal officer's person or property. Therefore, the First Amended Complaint does not state a claim under subsection one.

Subsection two prohibits conspiracies to interfere with federal and state court proceedings. 42 U.S.C. § 1985(2). It specifically prohibits conspiracies between:

> two or more persons in any State . . . to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified . . .; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State . . . with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the

laws[.]

42 U.S.C. § 1985(2). The First Amended Complaint does not allege that Seal was a party or witness in a federal court proceeding. There is no allegation that he was injured for having testified or attended a federal court proceeding. As for the state court proceeding portion of this statute, it requires a showing of racial or other class-based animus. *Daigle v. Gulf State Utils. Co.*, 794 F.2d 974, 979 (5th Cir. 1986). For the reasons discussed below, he does not allege any racial or class-based animus behind the conspiracy. Further, he does not allege that he was injured while trying to protect the equal rights of others. Therefore the First Amended Complaint does not state a claim under subsection two.

Finally, subsection three prohibits conspiracies "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws," or to prevent another from voting or advocating in a federal election. 42 U.S.C. § 1985(3). Again, a conspiracy to deprive another of the equal protection of the laws, requires a showing that "some racial, or class-based discriminatory animus lay behind the conspiracy." *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 270 (5th Cir. 2001). "It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' . . . its adverse effects upon an identifiable group." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 271-72 (1993). Some Fifth Circuit cases only accept racial claims under this provision. *Horaist*, 255 F.3d at 271 n.12; *Bryan v. City of Madison*, 213 F.3d 267, 276 (5th Cir. 2000); *Newberry v. E. Tex. State Univ.*, 161 F.3d 276, 281 n.2 (5th Cir. 1998); *Deubert v. Gulf Fed. Savs. Bank*, 820 F.2d 754, 757 (5th Cir. 1987). *Deubert* held, "*it is well-established* in this circuit that the only conspiracies actionable under section 1985(3) are those motivated by racial animus." *Id.*

(emphasis added).  However, *Deubert* did not address its contemporary cases which held otherwise.  For example, one such case held, "*It is well-settled* law that discriminatory animus behind an alleged violation of section 1985(3) must be racially based or in some other way class-based."  *Galloway v. Louisiana*, 817 F.2d 1154, 1159 (5th Cir. 1987) (emphasis added).  These other Fifth Circuit cases require a class that is based on an "inherited or immutable characteristic," political belief, or association.  *Sullivan v. County of Hunt*, 106 Fed. Appx. 215, 220 (5th Cir. 2004); *Hamill v. Wright*, 870 F.2d 1032, 1037-38 (5th Cir. 1989); *McLean v. Internat'l Harvester Co.*, 817 F.2d 1214, 1219 (5th Cir. 1987) (scapegoat employees not protected class, because it "does not possess discrete, insular and immutable characteristics similar to race, national origin or sex"); *Galloway*, 817 F.2d at 1159; *Kimble v. D.J. McDuffy, Inc.*, 623 F.2d 1060, 1066 (5th Cir. 1980).  Of course, none of these cases found the allegations of non-racial animus at issue to be sufficient.

Under either view, the First Amended Complaint here misses the mark.  The only characteristic Seal alleges he and the other alleged victims share is that they are "accused and arrested citizen[s] temporarily incarcerated as . . . 'pre-trial detainee[s],'" "other inmates," and "other detainees held in Booking."  (1st Am. Compl. at 1, 2, 37 (¶¶1, 5)).  His allegations, taken as true, do not state a conspiracy motivated by race, another inherited or immutable characteristic, political belief, or association.  *Accord*, *Burkett v. City of El Paso*, 513 F. Supp. 2d 800, 822 (W.D. Tex. 2007) ("those arrested by the El Paso Police Department" not sufficient to allege racial or class-based animus under Section 1985(2)).

Further there is no allegation that the conspiracy was to prevent another from voting or advocating in a federal election.  Therefore the First Amended Complaint fails to state a claim

under Section 1985(3). The Section 1985 claims against Movants are dismissed without prejudice.

II. SECTION 1986

Movants ask for dismissal of the Section 1986 claim. This statute provides:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in [Section 1985], are about to be committed, and having power to prevent or aid in preventing the commission of same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured.

42 U.S.C. § 1986. In other words, the existence of a Section 1985 conspiracy is an element of the Section 1986 claim. Because Seal has failed to plead this element, he has not stated a Section 1986 claim.

MOTION FOR SUMMARY JUDGMENT

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. To make this determination, the Court must view the evidence in the light most favorable to the non-moving party. *Abarca v. Metro. Transit. Auth.*, 404 F.3d 938, 940 (5th Cir. 2005). A "material fact" is one that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute about a material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* The party that bears the burden of proof at trial also bears the burden of proof at the summary judgment stage. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986). "[W]hen a motion for summary judgment is made and supported . . .

an adverse party may not rest upon . . . mere allegations or denials . . . but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

I. SECTION 1983

Movants seek qualified immunity on the excessive force claim and summary judgment on the denial of medical care and water and conspiracy claims.

A. EXCESSIVE FORCE

First, Movants argue they are entitled to qualified immunity on the excessive force claim because Seal's injuries did not result from Movants' use of force, and the force was not excessive. Alternatively, Movants contend they acted objectively reasonably under the circumstances.

In order to invoke the defense of qualified immunity, the "defendant official must initially plead his good faith and establish that he was acting within the scope of his discretionary authority. Once the defendant has done so, the burden shifts to the plaintiff to rebut this defense." *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992). To meet defendant's initial burden, he must "demonstrate that he acted with a good faith belief that his actions were within his lawful authority, and that reasonable grounds existed for this belief based upon objective circumstances at the time he acted." *Douthit v. Jones*, 619 F.2d 527, 534 (5th Cir. 1980).

A defendant is then entitled to qualified immunity, unless the plaintiff (1) alleges that the defendant violated a constitutional right, and (2) proves that the defendant's conduct was objectively unreasonable. *Salas*, 980 F.2d at 305-06. Stated differently, qualified immunity does not apply when "the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right [and] the right at issue

was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 129 S. Ct. 808, 815-16 (2009) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

A defendant's conduct will be considered objectively unreasonable, if a reasonable official would understand that his conduct violates that constitutional right. *Salas*, 980 F.2d at 310. If reasonable officers could disagree over the lawfulness of his conduct, then the defendant is entitled to qualified immunity. *Id.* The officer's conduct is viewed in light of the clearly established law at that time. *Hare v. City of Corinth*, 135 F.3d 320, 326 (5th Cir. 1998).

The Due Process Clause, applicable to the States via the Fourteenth Amendment, protects a pretrial detainee from excessive force that amounts to punishment. *Graham v. Connor*, 490 U.S. 386, 395 n.11 (1989). The standard for analyzing an excessive force claim under the Fourteenth Amendment is the same as the Eighth Amendment standard. *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993). This right is violated if there is (1) more than a de minimis injury, (2) which resulted directly and only from the use of force that was excessive to the need, and (3) the force was objectively unreasonable. *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001). To determine whether the force was excessive, the inquiry is "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." *Valencia v. Wiggins*, 981 F.2d 1440, 1446 (5th Cir. 1993). "Often, of course, there will be no evidence of the detention facility official's subjective intent, and the trier of fact must base its determination on objective factors suggestive of intent." *Id.* Some of these factors would be (1) the extent of the injury suffered, (2) the need for the application of force, (3) the relationship between the need and the amount of force used, (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the

severity of the forceful response. *Id.* at 1447 n.29.

First, Movants say that their use of force did not cause Seal any injuries because his eye laceration was caused by the Gulfport Police Department and there is no evidence he has sustained permanent nerve damage. Movants do not address the other injuries that Seal claims they caused. For this reason, they have not shown they are entitled to summary judgment. Additionally, there is a dispute of fact as to whether Movants caused this laceration, which required stitches, to Seal's left eye. He testified that after his arrest, he was bleeding from the left side of his face, but he could not tell from where. He could only see the blood on his shirt. He testified that when Movants used force on him, they "slamm[ed him] to the ground and slamm[ed his] eyebrow into the pavement." (Pl.'s Dep. at 88). Immediately afterwards, blood started pouring down profusely over his left eye. The jail nurse who treated him afterwards noted that he had, among other injuries, both a laceration to his left cheek and a laceration over his left eye. According to Wills, Seal came to the HCADC with an old, scabbed wound, over his left eye, which "opened up and he started bleeding" after Movants took him to the ground. (Werby Aff., Nov. 4, 2009, Ex. E-2 at 6). All of this is evidence from which a reasonable jury could conclude that Movants' use of force caused, at a minimum, the laceration above his left eye. Because of this dispute of fact, the Court need not examine whether Movants caused other injuries.

Next, Movants argue that their use of force was not excessive because Seal's arms were flailing, he was belligerent, and he had struck Thompson. There is a dispute of fact as to whether any of this occurred. Seal testified:

> Q. Okay. So you're just asking them to attend to the wounds that were bleeding, correct?

A. Right. Had bled.

Q. Had bled, I'm sorry. Now, you were ordered to go and stand and put your hands on the counter, the booking counter at the jail, weren't you?

A. Yes, ma'am.

Q. But you didn't; you started flailing around?

A. No, ma'am.

Q. Okay. What did you do when they ordered you to put your hands on the counter?

A. Put my hands on the counter.

Q. And then what happened next?

A. They . . . stretched me just as far as possible. They had released the cuffs. They told me to stand back against the wall. I was standing there. That's when I demanded medical treatment again. They didn't want to do it. I demanded medical treatment again. They didn't want to do it.

. . .

A. They refused. They told me to stand back against the wall. I stood back against the wall. Wills . . . said, well, we'll just get some peroxide or some alcohol and pour it on your little wound. I said, no, you will not do such a thing because you're not going to pour a caustic substance in a fresh wound and make the wound worse.

Q. Okay. If I can stop you there. So Officer Wills did offer–

A. No.

Q. –to give you some medical treatment?

A. That was a smart aleck response, in my opinion.
. . .

A. As I recall, Wills and I kind of went back and forth.

MS. BROOM:

> Q. Verbally?
>
> A. Verbally.
>
> Q. Okay. Where were you standing at that moment?
>
> A. Back against that wall.
> . . .
>
> Q. What was said during this argument; do you know?
>
> A. Kind of debating over him saying that he was going to put alcohol and peroxide on the wound and him continuing it, and I said no, you're not. And I told him . . . again that I wanted to see the nurse for treatment. And I can't remember exactly which, but there were curse words exchanged between–
>
> Q. So you're admitting that you were using profane language against Wills?
>
> A. I admit that, and I admit that he was, also. And he said, M[*]th[*]rf[*]ck[*]r, just wait a minute.
>
> Okay. So whatever he was doing, got through. They came around the side of booking, and I remember Thompson grabbing me, along with . . . Wills. Those are the only two I can really remember–I know there was others there–and slamming me to the ground and slamming my eyebrow into the pavement. I swear to God I remember that. And I remember Thompson putting my head into a choke hold, Wills grabbing my thumb, and I do remember passing out. I remember coming to, and one of the corrections officers said, put the cuffs on just as tight as you can. And then they put me back up against the wall, and I was sitting there.

(Pl.'s Dep. at 83-89). Seal explained that Movants and the other officers were behind the booking desk, which is protected by a cage, and Seal was on the opposite side of the cage, standing against the wall across from it during the argument with Wills. He told Seal, among other things, "the power is down and there's no cameras." *Id.* at 162. According to Wills, the jail was on generator power at the time, because this was just six days after Hurricane Katrina. Seal testified that Movants and the other officers then rushed at him from out around the booking

-12-

cage. Then, because he could tell they were about to assault him, he took two steps forward and put his hands up in the air.

Notably, Thompson never claimed that Seal struck him. In fact, Thompson testified that he did not remember Seal doing that. Rather, Thompson said that he:

> later saw on the tape, that [Seal's] arm came up. The tape was real sketchy, so you can't exactly see what movements he's making. But his arm came up, and Wills had hit him, gave him a strike, pushed him, done something to send him into me on accident. That's when we took him to the floor.

(Thompson Dep., 11:06-11:35 a.m., at 10). Further, Wills's account of the incident, found in the Internal Affairs report, did not include an accusation that Seals struck Thompson. Rather, this was a justification cited by Internal Affairs, as its interpretation of the surveillance video, which has not been produced.

This is evidence from which a reasonable jury could conclude that Seal was neither flailing his arms, being belligerent, nor did he strike Thompson. Rather, a jury could conclude that he was taken down for repeatedly asking for medical attention. Therefore, Movants are not entitled to summary judgment on whether their use of force was excessive.

Finally, Movants argue that they acted objectively reasonably because Seal had struck Thompson and Seal was flailing his arms around. Since there is evidence that Seal did not act in this manner, Movants are not entitled to summary judgment on whether they acted objectively reasonably.

### B. DENIAL OF MEDICAL CARE

Next, Movants argue there is no evidence that they were deliberately indifferent to Seal's medical needs because he was treated at the jail and also he was not damaged as a result. Seal

-13-

appears to make only a denial of medical care claim as to Movants.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "This is true whether the indifference is manifested by . . . prison guards in intentionally denying or delaying access to medical care." *Id.* at 104-05. The "plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino v. Tex. Dep't of Crim. J.*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). "The mere delay of medical care can . . . constitute a . . . violation but only 'if there has been deliberate indifference [that] results in substantial harm.'" *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). "Deliberate indifference . . . occurs only where a prison official subjectively knows of and disregards a substantial risk to the inmate's health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The "official's knowledge of a substantial risk of harm may be inferred if the risk was obvious." *Easter*, 467 F.3d at 463. In addition, Section 1983 requires a showing of proximate causation, which is evaluated under the common law standard. *Murray v. Earle*, 405 F.3d 278, 290 (5th Cir. 2005).

For example, in *Easter*, the plaintiff alleged that "Powell refused to provide any treatment to, and ignored complaints of, a patient suffering from severe chest pain that she knew had a history of cardiac problems. Powell's alleged conduct meets the 'deliberate indifference' threshold." *Easter*, 467 F.3d at 464. In this situation, it was inferrable that Powell knew of the substantial risk of harm. *Id.* at 463. The court further noted that Easter's separate delayed

treatment claim failed, because he did not allege that it resulted in serious harm. *Id.* at 464. However, he "clearly stated" a violation regarding his refusal to treat claim for the "severe chest pain he suffered during the period of time Powell refused to treat him." *Id.* at 464-65.

Movants' reason for their lack of deliberate indifference is that Seal was seen by a nurse and a doctor. There is evidence that Seal was bleeding from his face and that he repeatedly asked Movants to see a nurse for medical treatment. According to him, Movants first sarcastically told him they would pour alcohol on it, cursed at him, and then tackled him. Finally, Seal testified:

> I know a nurse, after my beating, did come to booking, did dress it, did tell the cops, correction officers he needs to go out, which is their lingo for needs to go to Memorial [Hospital], he needs stitches. They said, no transports available. So they refused me medical care, absolutely refused me proper medical care.

(Pl.'s Dep. at 102). This is evidence from which a reasonable jury could find that Movants were deliberately indifferent to Seal's medical needs. Despite the fact that the nurse told them that he needed to go to the Emergency Room for stitches, they did not provide him transportation. Movants argue that no transport was available and even if it was they were too overworked to immediately seek transport. Movants point to no evidence that there was an actual lack of transportation or that they were too busy to seek it when the nurse requested it, or at any time thereafter. When asked to describe the post-Katrina conditions at the jail, Thompson makes no mention to the lack of transportation. Movants do not deny that they never tried to get the transportation. Indeed, when the jail doctor some thirteen and a half hours later, ordered Seal be transported to the Emergency Room, Harrison County deputies provided the transportation. Rather, the evidence viewed in the light most favorable to Seal indicates that Movants ignored both his and the nurse's requests for medical treatment.

Movants alternatively argue that Seal was not damaged because of their denial of treatment. As *Easter* makes clear, in a failure to treat case, the plaintiff may recover for the pain he suffered during the time that the official failed to treat him. *Id.*; *Thayer v. Adams*, 2010 U.S. App. LEXIS 23292 at *20 (5th Cir. Feb. 4, 2010); *Chapman v. Johnson*, 339 Fed. Appx. 446, 448 (5th Cir. Aug. 3, 2009) (affirming denial of qualified immunity for failure to give Ibuprofen for a swollen ankle). There is evidence that he had been bleeding from the face after an altercation with Gulfport police, was then slammed head first into the floor by Movants, immediately began bleeding profusely, was choked until he passed out by Thompson, his handcuffs were placed on tightly, and his thumb was sprained by Wills. A nurse then ordered Movants have Seal seen by Emergency Room doctors. Seal complained of the corresponding pain as a result. As a failure to treat claim, he may recover for the pain he suffered. Movants are not entitled to summary judgment on this claim.

### C. DENIAL OF HYDRATION

Seal alleges that he was denied water/hydration while at the HCADC. "The Constitution does not mandate comfortable prisons . . . but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999). The constitutional prohibition against cruel and unusual punishment requires that prisoners be afforded humane conditions of confinement, receive adequate food, shelter, clothing, and medical care. *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001). To establish a constitutional violation due to conditions of confinement, an inmate must show (1) that prison officials deprived him of "the minimal civilized measure of life's necessities;" and (2)

that the prison officials acted out of indifference to the inmate's health or safety. *Id.* In deciding the constitutionality of conditions of confinement of pretrial detainees, the Court must determine whether the conditions complained of are imposed for the purpose of punishment. *Bell v. Wolfish*, 441 U.S. 520, 538-539 (1979).

Movants argue only that Seal was not denied water because he was given an eight ounce carton of milk, a sip of water, and had running water in his cell. Seal was brought into the HCADC at about 11:00 p.m. on the night of September 4. The next morning, with breakfast, he was given an eight ounce carton of milk to drink. Later that afternoon, sometime after 2:30 p.m., he was given a sip of water with which to take medicine. He states that this was all of the hydration with which he was provided. "The next morning [September 6] when the nurse came by with my blood pressure medicine, I had to take it dry." (Pl.'s Dep. at 106). Other inmates, on the other hand, were given cups, which prison officials would fill with Kool Aid. Thus, there is a dispute of fact as to whether Seal had access to running water or only had one serving of milk and a sip of water in a forty-three and a half hour period.

### D. CONSPIRACY

Seal asserts Section 1983 conspiracy claims against Movants for the alleged conspiracies to use excessive force and to cover it up. Movants challenge the first conspiracy claim, arguing there was no agreement to assault him and he did not suffer a deprivation of a constitutional right as a result. He responds that he has evidence of such a conspiracy and excessive force.

"A conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act." *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995). In other words, Movants may be held liable

for excessive force either directly, as the tortfeasors who inflicted the alleged force, or as co-conspirators, regardless of who inflicted the excessive force. Because the direct excessive force claim survives summary judgment against each Movant, it is not necessary for the Court to consider whether they alternatively have co-conspirator liability at this time.

Movants next argue the second conspiracy claim must fail because Seal is presently bringing a civil action for the alleged excessive force. He responds that there is a genuine issue of material fact as to whether the conspiracy to cover-up existed and whether there was a cover up of the alleged violations.

This particular conspiracy claim alleges a conspiracy to deny Seal's access to courts. To prevail on this claim, he must prove that the conspiracy "hindered his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). It is not clear if he is pleading a "forward-looking" or "backward-looking" access claim. A forward-looking access claim is a case where the "litigating opportunity yet to be gained" is being blocked by the defendants. *Christopher v. Harbury*, 536 U.S. 403, 414 (2002). "The object . . . is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Id.* at 413. He cannot prove a forward-looking denial of access, because he has in fact filed the excessive force claim.

A backward-looking claim is about "an opportunity already lost." *Id.* at 414-15. It looks "backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable." *Id.* at 414. For a "backward-looking access claim," Seal must prove (1) an underlying cause of action, (2) the litigation of which was frustrated by official acts, (3) which resulted in a lost remedy. *Id.* at 415-16. As for the third

element, he:

> must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought. There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element.

*Id.* at 415. For example, the official deception "may allegedly have caused the loss or inadequate settlement of a meritorious case, the loss of an opportunity to sue, or the loss of an opportunity to seek some particular order of relief." *Id.* at 414.

On the record as it presently stands, the Court finds no evidence that Seal has lost a remedy for his excessive force claim. There has yet been no loss nor "inadequate settlement." The Court is provided with no evidence of a lost opportunity to sue Movants or others, or the lost opportunity to seek some particular relief. Therefore, Movants are entitled to dismissal of the Section 1983 claim for conspiracy to deny access to the courts.

II. SECTION 1985

Movants seek summary judgment on the Section 1985 claims in the event their 12(b)(6) motions to dismiss these claims is denied. As set forth above, this part of the summary judgment motion is moot.

SECOND MOTION TO STRIKE

Movants argue that Seal's exhibits C-E and G-I are inadmissible on summary judgment to prove his conspiracy claims. As shown above, the Court did not consider these exhibits in sustaining his Section 1983 claim for conspiracy to abuse. Moreover, the exhibits were immaterial to the Court's dismissal of the remaining conspiracy claims. Therefore, Movants' second Motion to Strike is moot.

**IT IS THEREFORE ORDERED AND ADJUDGED**, that for the reasons stated above, Defendant Thomas Preston Wills's Motion to Dismiss Plaintiff's 42 U.S.C. § 1985 and 42 U.S.C. § 1986 Claims for Failure to State a Claim Upon Which Relief can be Granted [239] should be and is hereby **GRANTED.** The Section 1985 and 1986 claims against Wills are dismissed without prejudice.

**IT IS FURTHER ORDERED AND ADJUDGED** that Defendant Morgan Thompson's Motion to Dismiss Plaintiff's 42 U.S.C. § 1985 and 42 U.S.C. § 1986 Claims for Failure to State a Claim Upon Which Relief can be Granted [244] should be, and is hereby **GRANTED.** The Section 1985 and 1986 claims against Thompson are dismissed without prejudice.

**IT IS FURTHER ORDERED AND ADJUDGED** that Wills and Thompson's Motion for Summary Judgment, Qualified Immunity [257] should be and is hereby **GRANTED** as to the conspiracy to deny access to courts claim. The remainder is **DENIED.**

**IT IS FURTHER ORDERED AND ADJUDGED** that Wills and Thompson's second Motion to Strike [295] should be and is hereby **DENIED AS MOOT.**

**SO ORDERED AND ADJUDGED** this the 18th day of June, 2010.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE
